632 S.E.2d 922

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Matthew BOLEN, Defendant Below, Appellant.**

No. 32887.

Supreme Court of Appeals of West Virginia.

Submitted April 11, 2006.

Decided June 16, 2006.

Dissenting Opinion of Justice Maynard June 16, 2006.

238

Glen D. Conway, Esq., Huntington, Attorney for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Robert D. Goldberg, Esq., Assistant Attorney General, Charleston, Attorneys for Appellee.

PER CURIAM:

This case is before the Court on appeal from an April 27, 2005, sentencing Order of the Circuit Court of Cabell County.[1] In that Order, the court sentenced Appellant to two concurrent terms of fifteen to twenty-five years in prison following his conviction on two counts of first degree sexual assault. This Court has before it the petition for appeal, the response, the briefs of the parties, and all matters of record. Following the arguments of the parties and a review of the record herein, this Court finds that the

1. Appellant was originally sentenced on September 23, 2002; however, his appointed counsel failed to file an appeal on behalf of Appellant, so Appellant was resentenced for purposes of filing this appeal.

circuit court committed plain error in allowing the State to offer evidence of the victim's religious beliefs in order to bolster the victim's credibility. Accordingly, this Court reverses the April 27, 2005, Order of the circuit court and remands the matter for retrial.

## I.

### FACTS

In the summers of 1992 and 1993, Appellant was sixteen and seventeen years old, respectively. At the time, he lived at home with his parents and his brother in Huntington, West Virginia. His neighbor, C.J.,[2] was seven and eight years old during those same summers. Despite the age difference, Appellant and C.J. became friends, and C.J. spent a good deal of time at Appellant's house. The two played play video games and would generally "hang out." C.J. later testified that he went to Appellant's house to play every other day.

There is some dispute in the record as to whether the two were under any sort of adult supervision, in 1992 and 1993. There was no indication at the time that anything improper had occurred between the two. The record reveals that on one occasion during this time, C.J. drew a picture at school of two men engaging in oral sex. When C.J. accused a fellow classmate of having drawn the picture, the matter was dropped.

Around the summer of 2000, C.J., who was then 16 years old, joined the youth group at the Lewis Memorial Baptist Church. One aspect of the youth group's fellowship was an annual mission trip to the Dominican Republic. The youth group spent a fairly substantial amount of time preparing for the trip each year, undertaking exercises to prepare themselves mentally and spiritually for the trip. The 2000 trip was C.J.'s first with the group.

One night, as C.J. and two of his friends (who he happened to know from church) were talking, C.J. became upset and began to cry. The two friends inquired as to what was upsetting C.J., and C.J. suggested that it was something that had happened when he was very young. When his friends asked C.J. if had been molested, C.J. answered that he had been. The friends then took C.J. to tell his parents.[3]

C.J. alleged that, between the summers of 1992 and 1993, Appellant had repeatedly performed oral sex on C.J. and that made Appellant C.J. perform oral sex on him. C.J. expressed that, at the time, he was unaware that the act was wrong. It was not until he grew older that he realized that the situation was not "normal." C.J. and his parents went to the police and filed a complaint.

Appellant was initially charged as a juvenile on June 1, 2001, but on June 14, 2001, the case was transferred to adult status. On July 14, 2001, Appellant was indicted on two counts of first degree sexual assault. A trial was held between May 29th and May 30th of 2002.

In its opening statements, the State emphasized C.J.'s religious convictions and his devotion to his church and to God, repeatedly referring to C.J.'s "spiritual commitment," his missionary activities, and his desire to "get himself right with Christ." At one point, the State said, "[C.J.] is a sensitive man, a young man, excuse me, a sensitive young man who has no vindictiveness in his heart—." At that point, defense counsel[4] objected, stating, "That's for the jury to decide. That's a factual question. I have let Mr. Martorella go a long way, but we are getting outside the scope of an opening statement to his personal opinions." The trial court admonished the State to "just tell what you think the evidence is going to be." The State then said:

---

**2.** As is the practice of this Court in sensitive matters and matters involving children, we refer to the victim by his initials only. *In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

**3.** Later, C.J. also confided to his youth pastor that he had been molested.

**4.** At trial, Appellant was represented by two attorneys from the Cabell County Public Defender's Office, neither of whom is Appellant's current attorney.

I believe that the evidence will show you that he is a sensitive man—young man. . . . I believe that the evidence will show you that he has evil in his heart [sic], and I believe for the State that the evidence will show you for the State [sic] that any young man who would come in here before a judge he doesn't know, before two able and capable public defenders waiting to get at him and before you twelve utter strangers to tell you what occurred in order to get himself straight with himself, to get himself straight with God, and to get himself aligned with the law is courageous and there is no other rationale, no other action that you all can take but believe him under oath and—.

Defense counsel again objected, but the court overruled the objection.

During its case in chief, the State again raised the issue of C.J.'s faithful church attendance and his missionary activities, but it was in closing arguments that the State emphasized its point. The State said:

> The verdict really shouldn't be guilty or not guilty. It should be, "We believe [C.J.], seven or eight years old," or "[C.J.] is a liar," and under the principles of his church, a person who said, "I wanted to take up my cross for Christ" would bear the responsibility of lying to God and to man. That's your decision.

And then:

> He is not telling the truth because he wants to come in here and tell twelve people of a perverse act performed on him by a perverse person ten years ago. He is telling it because it's God's commandment and the consequences of that brings it here.

And finally:

> Your duty is to find out in your mind as a body to deliberate, is [C.J.] telling the truth or is [C.J.] a liar who is going to go to Hell? And I tell you, Ladies and Gentlemen of the Jury, he is carrying his cross every day and he will for the rest of his life.

On May 30, 2002, the jury delivered its verdict, convicting Appellant on both counts of the indictment. Appellant was subse- quently sentenced to two concurrent terms of fifteen to twenty-five years in prison. He now appeals, arguing that the trial court committed plain error in allowing the State to offer evidence of C.J.'s religious beliefs to bolster C.J.'s credibility and that the State committed prosecutorial misconduct when it referenced C.J.'s religious beliefs and vouched for the record.

## II.

### STANDARD OF REVIEW

We have held that "[o]ur practice is to review a trial court's rulings regarding the admissibility of evidence under an abuse of discretion standard." *State v. Potter,* 197 W.Va. 734, 749, 478 S.E.2d 742, 757 (1996). However, here, Appellant failed to object to the admissibility of the evidence which he now challenges. "[W]hen a defendant fails to object to inadmissible evidence, he or she has forfeited the right to assign error on appeal and we may review the arguments only for plain error." *State v. Marple,* 197 W.Va. 47,51, 475 S.E.2d 47, 51 (1996) (citations omitted). With that in mind, we turn to our review of the facts as they apply to the law.

## III.

### DISCUSSION

#### A. Plain Error

Appellant asserts that the trial court committed plain error when it allowed the State to continually elicit testimony at trial and make comments to the jury about C.J.'s religious beliefs and devotion to his faith in violation of Rule 610 of the West Virginia Rules of Evidence. Rule 610 states, "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced."

In this case, where there was no physical evidence of or corroborating eyewitness testimony to the crime outlined in the indictment, the State repeatedly elicited testimony that C.J. was a very religious young man who attended church faithfully and strictly ad-

hered to God's commandments. The State contends that it only raised the issue of C.J.'s religious faith to explain why C.J. came forward with his history of abuse when he did. The State argues that the "[e]vidence explaining the eight-year lapse [between the abuse and the allegations of abuse] was clearly relevant because it was intertwined with the credibility of the victim's allegations." Appellant, on the other hand, argues that the State, in fact, offered the evidence for the sole purpose of bolstering C.J.'s credibility in a case where credibility was of great importance.

We tend to agree with Appellant. While it may well have been necessary for the State to explain the eight-year lapse in time, it was not necessary for the State to repeatedly reference C.J.'s church affiliation and his religious beliefs. Although there were no direct objections to this evidence at trial, we have previously held that:

Plain error review creates a limited exception to the general forfeiture policy pronounced in Rule 103(a)(1) of the West Virginia Rules of Evidence, in that where a circuit court's error seriously affects the fairness, integrity, and public reputation of the judicial process, an appellate court has the discretion to correct error despite the defendant's failure to object. This salutary and protective device recognizes that in a criminal case, where a defendant's liberty interest is at stake, the rule of forfeiture should bend slightly, if necessary, to prevent a grave injustice.

Syl. Pt. 1, *State v. Marple*, 197 W.Va. 47, 475 S.E.2d 47 (1996). Therefore, we will exercise our discretion to determine whether there was plain error on the part of the trial court in allowing the evidence.

This Court has recognized that, "[i]n criminal cases, plain error is error which is so conspicuous that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting the error. *See United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816, 827 (1982)." *State v. Marple*, 197 W.Va. 47, 52, 475 S.E.2d 47,52 (1996). We have held that in order "[t]o trigger application of the 'plain error' doc-

trine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). With this standard, we review the record.

*1. Was there an error?* In order to determine if there was an error in admitting the evidence of C.J.'s religious beliefs, we turn to *State v. Potter*, 197 W.Va. 734, 478 S.E.2d 742 (1996). In Syllabus Point 5, we held that:

For religious belief or affiliation evidence to be admissible, the trial court must make the following findings: (1) the evidence of religion is offered for a specific purpose other than to show generally that the witness's credibility is impaired or enhanced; (2) the evidence is relevant for that specific purpose; (3) the trial court makes an on-the-record determination under Rule 403 of the West Virginia Rules of Evidence that the probative value of the evidence was not substantially outweighed by its potential for unfair prejudice; and (4) the trial court, if requested, delivers an effective limiting instruction advising the jury of the specific purpose(s) for which the evidence may be used. If these elements are met, it may be presumed that the complaining party was protected from undue prejudice.

In assessing these factors, we are drawn to the sheer number of references to C.J.'s religious beliefs, not only in the testimony elicited by the State but also in its opening statement and closing argument. The State asserts that it offered the evidence of C.J.'s religion for the specific purpose of explaining why it had taken C.J. eight years to come forward with his allegations; however, we find that the evidence was not relevant for that purpose.

C.J. came forward to two friends and a mentor after eight years because he had been harboring this secret of which he was ashamed. We fail to see the relevance that these two friends and mentor were affiliated with C.J.'s church or that C.J. was "spiritually committed" to his religious beliefs and that

he wanted to "get himself right with God." [5] Therefore, we cannot say that the volume of evidence put forth by the State of C.J.'s religious conviction was offered simply for the specific purpose of explaining why C.J. waited eight years to come forward with his allegations. Rather, we believe that it was largely offered for the express purpose of bolstering C.J.'s credibility in violation of Rule 610. Accordingly, there was error in admitting the evidence.

■ *2. Was the error plain?* We have held that "[t]o be 'plain,' the error must be 'clear' or 'obvious.'" Syl. Pt. 8, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). We think that, in this case, it is both clear and obvious that the court erred in allowing the evidence in question.

■ *3. Did the error affect substantial rights?*

"In determining whether the assigned plain error affected the 'substantial rights' of a defendant, the defendant need not establish that in a trial without the error a reasonable jury would have acquitted; rather, the defendant need only demonstrate the jury verdict in his or her case was actually affected by the assigned but unobjected to error."

Syl. Pt. 3, *State v. Marple*, 197 W.Va. 47, 475 S.E.2d 47, (1996). A survey of the case put before the jury leaves little doubt but that the verdict was affected by the error. The State put on only four witnesses. The first was a probation officer who testified only as to Appellant's age. The second was the victim, C.J. The third was C.J.'s youth pastor, one of three people to whom C.J. confided his secret of alleged abuse, but who did not witness the alleged abuse. And the fourth was C.J.'s mother, who, like the youth pastor, did not have any knowledge of the alleged abuse beyond C.J.'s allegations.

The defense put on three witnesses. The first was Appellant's mother, who testified to refute C.J.'s assertions that he and the Appellant spent every other afternoon in Appel-

lant's basement playing video games together. The second was C.J.'s father, who was called for what seems to be the sole purpose of impeaching his own statement to police. Finally, the defense called Appellant's grandmother, who testified to refute C.J.'s assertions that he and Appellant spent time together alone in the basement, specifically after January of 1993. In the end, with no physical evidence to consider, this was a case of credibility of witnesses, and the jury's verdict was surely affected by the State's evidence of C.J.'s religious convictions.

*4. Did the error seriously affect the fairness, integrity or public reputation of the judicial proceedings?* We recognized in *State v. LaRock*, 196 W.Va. 294, 317, 470 S.E.2d 613, 636 (1996), that this analysis "requires a case-by-case exercise of discretion." And in *State v. Marple*, 197 W.Va. 47, 52, 475 S.E.2d 47,52 (1996), we found that:

Once a defendant has established the first three requirements of *Miller*, we have the authority to correct the error, but we are not required to do so unless a fundamental miscarriage of justice has occurred. Otherwise, we will not reverse unless, in our discretion, we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citations omitted). We exercise our discretion to find that, in this case, the error seriously affected the fairness of the trial inasmuch as the jury's verdict was unduly prejudiced by evidence which could only have the affect of bolstering C.J.'s credibility.

Therefore, we find that the court committed plain error in allowing the State to introduce evidence of and comment on C.J.'s religious beliefs to the degree present in this case in order to bolster his credibility.

### B. Prosecutorial Misconduct

■ Appellant also argues that the State committed prosecutorial misconduct in the manner how it referenced C.J.'s religion and vouched for the record both in its open-

---

**5.** There was no on-the-record determination of whether the probative value of the evidence outweighed any unfair prejudice because there was no objection made to the testimony in question. However, the plain error doctrine does not re-

quire that an objection be made. There was, likewise, no limiting instruction requested, so that part of the evaluation of the evidence is irrelevant to our analysis as well.

ing and closing remarks. We have long recognized that:

> The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

Syl. Pt. 3, *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977). With that in mind, we developed the following test:

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. Pt. 6, *State v. Sugg,* 193 W.Va. 388, 456 S.E.2d 469 (1995).

In this case, Appellant takes issue with the State's repeated reference to C.J.'s "spiritual commitment" and his desire to "get himself right with God" as well as its attempts to vouch for C.J.'s credibility and religious fervor by stating that it believed that C.J. had "no vindictiveness in his heart" and that C.J. was "carrying the cross of Christ." Perhaps most disturbing, though, were the State's closing remarks regarding whether a man as religious as C.J., who was so devoted to keeping God's commandments, would lie and, therefore, be in danger of burning in Hell.

We believe that the State's remarks clearly had the potential to mislead the jury into thinking that C.J. couldn't possibly be untruthful, which prejudiced Appellant. Far from isolated, the State's remarks were deliberately interjected throughout the record in this case. Given the utter lack of physical evidence or eyewitness testimony in this case, there was no proof of guilt beyond the testimony of C.J., so it is clear that the evidence was placed before the jury for the purpose of bolstering his credibility and diverting the jury's attention from the lack of corroborating evidence. Therefore, we conclude that the State acted improperly.

## IV.

## CONCLUSION

Because we find that the court committed plain error in allowing evidence of a witness's religious affiliation and belief and because the State acted improperly in presenting said evidence and in vouching for the victim's credibility, we reverse the April 27, 2005, Order of the Circuit Court of Cabell County and remand this matter for a new trial to include a hearing regarding the factors outlined in *Potter* should the State again choose to offer evidence of the victim's religious convictions.

Reversed and Remanded with directions.

MAYNARD, Justice, dissenting:

(Filed June 16, 2006)

In this case, the majority unnecessarily sets aside the conviction of a child sex offender.

Particularly troubling about this result is that our law by no means compels it. Significantly, the appellant's counsel did not object to the State's references to religion. Under our general rule, such a failure to preserve a trial error means that this Court will not consider the issue on appeal. In the instant case, however, the majority exercises its discretion to recognize the rare exception to our general rule known as plain error. However, I do not believe that the plain error doctrine is applicable under the facts of this case.

As noted by the majority, plain error should be used only where the error seriously affects the fairness, integrity, and public reputation of the judicial process. To me, this means that plain error should generally be recognized only where a defendant's constitutional rights are at issue. In the instant

case, however, there is no allegation that the appellant was deprived of a constitutional right. Instead, it is alleged that an evidentiary rule was violated. Therefore, I would not have exercised the Court's discretion to recognize plain error under these facts.

What the majority opinion amounts to in fact is premature habeas corpus relief. The appellant's complaint could have been more fully considered in a habeas corpus hearing in which the appellant could have raised ineffective assistance of counsel for failure to object to the references to religion. Only after a hearing in which evidence was offered could this Court have known why the appellant's counsel failed to object. Perhaps counsel had a certain strategy in mind. Perhaps counsel was sandbagging the State. Perhaps counsel was seeking an advantage on direct appeal. Unfortunately, because of the majority's decision to recognize plain error, we will never know what the appellant's counsel had in mind. What we do know, however, is that, because of the majority's unnecessary decision, a child sex offender is now free and the State must bear the time and expense of retrying him.

Accordingly, for the reasons stated above, I dissent.