COURT OF APPEALS
DECISION
DATED AND FILED

March 17, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2105-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2016CF1086

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JOHN R. ANGELICI,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Kenosha County: JODI L. MEIER, Judge. *Affirmed*.

Before Reilly, P.J., Gundrum and Davis, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. John R. Angelici appeals from a judgment of conviction and an order denying his postconviction motion.  He contends that the prosecutor's use of a complaining witness's religious beliefs during closing argument warrants a new trial either because of plain error or in the interests of justice or, alternatively, that he received ineffective assistance of counsel such that we should remand for a ***Machner***[1] hearing.  We disagree and affirm.

¶2    In August 2016, a woman named Dawn drove her 10-year-old grandson, C.S., to Michigan to visit a relative.  During the drive, C.S. asked her "if gay people go to hell."  Dawn assured him that they did not.  C.S. then said he was not gay but bisexual.   When Dawn questioned C.S. about that, C.S. said that Angelici, who was a family friend, had told him he was gay.

¶3    Alarmed that Angelici was telling her young grandson that he was gay, Dawn asked C.S. if Angelici ever touched him or "did anything."  She had previously asked C.S. if anyone had touched him inappropriately, and he had said no.  This time, however, Dawn asked C.S. to swear to God that he would tell her the truth.  C.S. subsequently admitted that Angelici had touched his penis and that he had touched Angelici's.

¶4    After returning home from the trip, Dawn reported C.S.'s disclosure to law enforcement, who arranged a Child Advocacy Center (CAC) interview with C.S. and began an investigation.  During the investigation, another member of C.S.'s family, R.M., came forward to report that he, too, had been sexually

---

[1]    *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

assaulted by Angelici when he was younger. According to R.M., the assaults occurred approximately fifteen years earlier when he was a teenager.

¶5 The State charged Angelici with one count of repeated sexual assault of a child and one count of first-degree sexual assault of a child with respect to C.S. It also charged Angelici with one count of repeated sexual assault of a child with respect to R.M. The matter proceeded to trial.

¶6 At trial, the jury heard from a number of witnesses, including C.S. and R.M., who detailed the alleged assaults. During C.S.'s testimony, he recounted his disclosure of the assaults to his grandmother. In response to defense counsel's questioning, C.S. acknowledged a fear of Hell if he swore to God and lied:

> [Defense counsel]: Okay. And do you remember you had a conversation with [your grandmother] on the way up really pretty early in the morning and there was—that she was asking you things?
>
> [C.S.]: Yeah, she was asking—well, she was like talking— well, we were talking about like God and like if you swear to God and you break that then you go to hell or stuff like that because I'm terrified to go to hell. And then—
>
> [Defense counsel]: Okay.
>
> [C.S.]: —that's about it.

¶7 When defense counsel asked C.S. whether he and his grandmother had discussed Angelici, C.S. explained, "[a]nd then that's when I—well, she asked me like is [Angelici] molesting you and I said no. And she's like do you swear to God and I'm like I can't do that so I told her the truth." Defense counsel did not object to this testimony.

¶8      In her closing argument, the prosecutor revisited the subject of C.S.'s disclosure via the CAC interview, which had been entered into evidence. The prosecutor stated:

> Remember the CAC interview, the very first one that [C.S.] did? [C.S.] explained in that interview that Dawn asked if [Angelici] was touching him, and [C.S.] said that he told her no. And then [C.S.] said that his grandma said, swear to God? And then [C.S.] says on that CAC interview, I can't do that, so I finally spilled the beans.
>
> The truth is important to [C.S.]. Swear to God changes everything for him when his grandma said that. He knows what a lie is. He knows how important it is to tell the truth. He knows that lies have consequences, that they can change everything. And now his grandma was asking him to swear to God.
>
> And for a 10 year-old child keeping a secret of sexual abuse, that made all the difference.

¶9      Later on in closing argument, the prosecutor discussed the concepts of reasonable doubt and witness credibility, referencing C.S.'s testimony about his fear of Hell:

> And so beyond a reasonable doubt isn't a hundred percent sure. There has to be a reason for the doubt. It is a doubt for which a reason can be given. And critically, that reason has to be based on the evidence. We know why the defendant would lie. Why is [R.M.] lying? And not just [R.M.], there's two victims here. Why are [R.M.] and [C.S.] both lying? When people lie, there is a reason. The bigger the lie, typically the bigger the reason, and this would be a huge lie, the kind of lie that [C.S.] would be afraid of going to hell for.
>
> Remember, he testified he's terrified of going to hell.

Again, defense counsel did not object.

¶10      Ultimately, the jury returned guilty verdicts to the charges of first-degree sexual assault of C.S. and repeated sexual assault of R.M. It returned a not

guilty verdict to the charge of repeated sexual assault of C.S. The circuit court imposed an aggregate sentence of 36 years of initial confinement and 20 years of extended supervision.

¶11 Angelici filed a postconviction motion for relief. In it, he accused the prosecutor of improperly using C.S.'s religious beliefs during closing argument to bolster credibility, contrary to WIS. STAT. RULE 906.10 (2019-20).[2] The circuit court denied the motion without an evidentiary hearing. This appeal follows.

¶12 On appeal, Angelici renews his complaint regarding the statements made in the prosecutor's closing argument. Because he forfeited the right to raise the issue directly, he seeks relief under any of three grounds: plain error, ineffective assistance of counsel, or interests of justice. We consider each one in turn.

¶13 Plain error is "'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'" *State v. Lammers*, 2009 WI App 136, ¶12, 321 Wis. 2d 376, 773 N.W.2d 463 (citation omitted). The error must be "'obvious and substantial,'" and courts should use the doctrine sparingly. *Id.* The existence of plain error will turn on the facts of a particular case. *Id.*, ¶13.

---

[2] WISCONSIN STAT. RULE 906.10 provides, "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness's credibility is impaired or enhanced." All references to the Wisconsin Statutes are to the 2019-20 version.

¶14 Here, we are not persuaded that the prosecutor's statements amounted to plain error. To begin, the statements were a negligible part of the prosecutor's closing argument, which spanned 32 pages of trial transcript. Moreover, they concerned evidence that was properly admitted to show how C.S. went from denying that he had been touched inappropriately to then claiming that Angelici had done so. The prosecutor was entitled to detail and comment on evidence presented at trial. *State v. Draize*, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979).

¶15 On these facts, we view the prosecutor's statements as too attenuated to constitute a violation of WIS. STAT. RULE 906.10. This was not a case like *State v. Bolen*, 219 W. Va. 236, 632 S.E.2d 922 (2006) where the prosecution offered evidence of the complaining witness's religious beliefs and repeatedly referenced them in order to bolster his credibility.[3] Indeed, C.S.'s religious beliefs

---

[3] In *State v. Bolen*, 219 W. Va. 236, 632 S.E.2d 922 (2006), which also involved the alleged sexual assault of a child, the prosecutor presented evidence of the complaining witness's church attendance and missionary activities. *Id.* at 240. In opening statement, the prosecutor repeatedly referred to the witness' "spiritual commitment" and desire to "get himself right with Christ." *Id.* at 239. Meanwhile, in closing argument, the prosecutor made such statements as:

> The verdict really shouldn't be guilty or not guilty. It should be, "We believe [the complaining witness], seven or eight years old," or "[The complaining witness] is a liar," and under the principles of his church, a person who said, "I wanted to take up my cross for Christ" would bear the responsibility of lying to God and to man. That's your decision.

> And then:

> He is not telling the truth because he wants to come in here and tell twelve people of a perverse act performed on him by a perverse person ten years ago. **He is telling it because it's God's commandment** and the consequences of that brings it here.

> And finally:

(continued)

6

were only disclosed during defense counsel's questioning. The prosecutor's subsequent reference to them in closing argument did not improperly enhance C.S.'s credibility. The jury's split verdicts on the charges relating to C.S. reflect that reality.

¶16 Absent a violation of WIS. STAT. RULE 906.10, trial counsel cannot be faulted for failing to object to the prosecutor's statements. *See State v. Wheat*, 2002 WI App 153, ¶30, 256 Wis. 2d 270, 647 N.W.2d 441 (defense counsel not ineffective for failing to bring meritless motion). Accordingly, we reject Angelici's request to remand the matter for a *Machner* hearing on his claim of ineffective assistance of counsel.

¶17 Finally, we exercise our discretionary power to grant a new trial in the interests of justice infrequently and judiciously. *State v. Ray*, 166 Wis. 2d 855, 874, 481 N.W.2d 288 (Ct. App. 1992). We have already determined that the prosecutor's statements did not amount to plain error or support a claim of ineffective assistance of counsel. We similarly conclude that they did not prevent the real controversy from being tried. *See* WIS. STAT. § 752.35.

---

> Your duty is to find out in your mind as a body to deliberate, is [the complaining witness] telling the truth or is [the complaining witness] a liar who is going to Hell? And I tell you, Ladies and Gentlemen of the Jury, he is carrying his cross every day and he will for the rest of his life.

*Id.* at 240 (emphasis in original). The reviewing court found that the circuit court had committed plain error by allowing such evidence/comments. *Id.* at 242.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.