475 S.E.2d 47

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**James Stephen MARPLE, Defendant Below, Appellant.**

No. 23163.

Supreme Court of Appeals of West Virginia.

Submitted May 28, 1996.

Decided June 14, 1996.

Scott F. Reynolds, Prosecuting Attorney, Diana H. Crutchfield, Assistant Prosecuting Attorney, Moundsville, for Appellee.

Gregory A. Gellner, Artimez & Gellner, Wheeling, for Appellant.

**CLECKLEY, Justice:**

This is an appeal from a conviction of first degree murder with a recommendation of mercy. The defendant below and appellant herein, James S. Marple, was convicted by a jury in the Circuit Court of Marshall County of first degree murder in causing the death of Tammy Winesberg and was sentenced to life imprisonment with a possibility of parole. On appeal, we are asked to determine whether reversible error occurred when the prosecuting attorney deliberately elicited testimony regarding the defendant's pretrial silence in violation of *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977).[1]

## I.

## FACTUAL AND PROCEDURAL HISTORY

The defendant and Tammy Winesberg ("Tammy") dated for several years.[2] Tammy was employed at a Wendy's restaurant in Benwood, and the defendant was employed in Marshall County as a nurse at a local hospital. On the night of December 12, 1993, Tammy and the defendant visited several bars along with an acquaintance, Roberta Berringer. While at one of the bars, the defendant and Tammy were observed having an argument. Ms. Berringer testified that, after the heated exchange, the defendant and Tammy abandoned her at the bar. The defendant and Tammy apparently went to his apartment at the McMechen Housing Authority after they abandoned Berringer.

Tammy and the defendant were seen at 1:50 a.m. in front of his apartment building by a police officer, who testified the defendant "grabbed her arm, pointed his finger at

[the officer] and lifted his arm up as if—it appeared as though he was going to strike her at that time." A neighbor of the defendant, Beverly Bartsch, testified that at about 2:30 a.m. she heard Tammy banging on the defendant's door and yelling, "Please let me in. I'll be good." Ms. Bartsch indicated Tammy pounded on the door for about five minutes before the defendant let her into the apartment. Ms. Bartsch telephoned the defendant at 2:45 a.m. and spoke with him for about five minutes.[3] Ms. Bartsch testified that while she spoke with the defendant she could hear Tammy's voice in the background.[4]

A fifteen-year-old minor, who lived in an apartment adjacent to the defendant, testified her bedroom wall was the common-wall that separated her bedroom from the defendant's bedroom and that shortly after 3:00 a.m. she was awakened by a "big loud boom." At about 3:20 a.m., Tammy Gordon, who also lived in an apartment abutting against the defendant's apartment, was awakened when she heard the name "Tammy" being yelled out from the defendant's apartment. Ms. Gordon testified that when she was awakened she heard banging noises and other sounds coming from the defendant's apartment. Within the space of fifteen minutes, Ms. Gordon heard the defendant talking with someone on the phone, heard someone walking down the stairs in the defendant's apartment, and heard the defendant's back door open.

The defendant's mother and stepfather testified they received a call from the defendant at about 3:20 a.m., and he informed them that Tammy was hurt and he wanted them to come over.[5] The defendant placed a

1. The defendant's petition for appeal alleged eight assignments of error. We granted this appeal for only one of such alleged errors.

2. The defendant previously was married and had a son from that marriage. The record indicates the defendant had custody of his son.

3. Ms. Bartsch had kept the defendant's son in her apartment that night. She testified she called the defendant to see if he wanted her to bring his son home. The defendant responded in the negative.

4. Ms. Bartsch also testified that when the defendant came to pick up his son from her home, the defendant informed her that Tammy was hurt and in the hospital. Bartsch asked the defendant if he had hit Tammy and he responded, "No, they did it." The defendant later told Ms. Bartsch that Tammy "fell out of bed and hit her head on the nightstand."

5. The defendant's mother gave the following account of what the defendant said to her when she arrived at his apartment with her husband:
 "Q. Okay. Did you ask him what had happened?

second call to his mother and stepfather within five minutes of his first call and said, "You haven't left yet." Rudi Conti, a dispatcher for the City of McMechen, testified he received an emergency call from an unidentified male at 3:37 a.m. informing him that a woman was bleeding from the head "at 230 Logan Street," the residence of the defendant. Mr. Conti dispatched an emergency medical squad and advised the police of the call.

Officers K. Cecil and G. Cramer testified that upon arriving at the defendant's apartment, they found the back door slightly open and a blood smear on the outside doorknob of the back door. When the officers entered the defendant's apartment, they observed the defendant "kneeling over" Tammy in the "dining room/kitchen area of the apartment." The officers testified to seeing "some blood in various places on the tile floor around her body" and "a large bump on the left temple area of" Tammy's head. Additionally, the officers "observed blood on the front of Mr. Marple's blue jeans, on his hand, [and] on his feet." The officers testified the defendant informed them he had tripped over Tammy when he got out of bed to go to the bathroom and he surmised she must have fallen out of bed and hit her head. There was further evidence that the defendant stated he carried Tammy down to the kitchen and placed her on the floor.

Susan Conners, an EMT worker, testified that while she was administering aid to Tammy she heard the defendant state, "I hit her once," "I didn't want to kill anyone," and "I never meant it." Another EMT worker, John Lowe, testified he overheard the defendant say to Tammy, "Wake up. Wake up. I didn't want to hurt you." The record indicates it was not until Tammy was taken to a local hospital that it was discovered by authorities she had been shot "at close range" in her left temple. Tammy died seven days later on February 20, 1993.

On July 13, 1993, the Marshall County grand jury returned a one-count indictment against the defendant charging him with the first degree murder of Tammy. On March 2, 1994, a jury returned a verdict of guilty of first degree murder, with a recommendation of mercy.[6] The defendant was subsequently sentenced to life imprisonment with a possibility of parole.[7] On appeal, the defendant contends it was reversible error for the prosecutor to have Officer Cecil testify about the defendant's post-*Miranda* silence.

## II.

### DISCUSSION

■ The defendant contends he is entitled to a new trial because the trial court erred in admitting evidence of his pretrial silence that was deliberately elicited in violation of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976),[8] and *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).[9]

"A. Yes, several times.
"Q. And what was his response to you[?]
"A. "I don't know."
"Q. He kept telling you he didn't know?
"A. He kept telling me he didn't know.
"Q. Okay. Did he ever tell you how he found Tammy or where he found her?
"A. Yes.
"Q. And what did he tell you about that?
"A. He told me that he got up from bed and stumbled over—he was on his way to the bathroom, and he stumbled over something, but by the time he got the light on he realized it was Tammy.
"Q. And then did he tell you what he did with Tammy?
"A. He said he took her downstairs."

**6.** The defendant did not testify at his trial nor did he put on a case-in-chief.

**7.** The record indicates the defendant was resentenced on November 23, 1994, because trial transcripts had not been produced and the appeal period was running out.

**8.** The *Doyle* " 'rule rests on "the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." ' " *Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S.Ct. 1710, 1716, 123 L.Ed.2d 353, 366 (1993), *quoting Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623, 630 (1986), *quoting South Dakota v. Neville*, 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748, 759 (1983).

**9.** "In the *Boyd* case the Court ... recognized that the prosecution may not use a criminal defendant's pretrial, post-arrest silence to impeach his later testimony." *State v. McCarty*, 184 W.Va. 524, 528, 401 S.E.2d 457, 461 (1991).

The evidentiary rulings of a circuit court, including those affecting constitutional rights, are reviewed under an abuse of discretion standard. *See McDougal v. McCammon*, 193 W.Va. 229, 235, 455 S.E.2d 788, 794 (1995) (deference is required given how quickly evidentiary rulings must be made, and trial courts must be able to make these decisions without fear of reversal); *United States v. Jackson*, 67 F.3d 1359, 1366 (8th Cir.1995); *United States v. Quintana*, 70 F.3d 1167, 1170 (10th Cir.1995). Even if we find the circuit court abused its discretion, the error is not reversible unless the defendant was prejudiced. *See State v. Guthrie*, 194 W.Va. 657, 684, 461 S.E.2d 163, 190 (1995). After a careful review of the record and the briefs of the parties, we find the issue presented on appeal was not properly preserved under the "raise and waive" rule that we announced recently in *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996). Under *LaRock*, we may overturn the verdict only if the admission of the evidence constitutes plain error. Under the circumstances of this case, we find the evidence does not constitute error egregious enough to warrant a new trial. Accordingly, we affirm the conviction.

### III.

### ANALYSIS

■ The defendant for the first time on appeal makes a serious and substantial objection to the prosecution's questioning of a State's witness. Rule 103(a) of the West Virginia Rules of Evidence states that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record, stating the specific grounds of objection, if the specific ground was not apparent from the context[.]" [10] It is a fundamental proposition of law that an appellate court generally will not entertain an alleged trial error unless it has been properly preserved at trial. *See State v. Miller*, 194 W.Va. 3, 17, 459 S.E.2d 114, 128 (1995) (" '[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court will result' in the imposition of a procedural bar to an appeal of that issue"), *quoting United States v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994) (*en banc*), *cert. denied*, —— U.S. ——, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995); *State v. Smith*, 178 W.Va. 104, 112, 358 S.E.2d 188, 196 (1987) (" '[o]ur general rule is that nonjurisdictional trial error not raised in the trial court will not be addressed on appeal' "), *quoting* Syl. pt. 9, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986); *Meadows v. Holland*, 831 F.2d 493, 498 (4th Cir.1987) ("West Virginia has always treated a failure to object to trial errors as a default of any right to assert these errors on direct appeal or in habeas review").[11] Thus, when a defendant fails to object to inadmissible evidence, he or she has forfeited the right to assign error on appeal and we may review the arguments only for plain error. *See United States v. Ross*, 77 F.3d 1525, 1538 (7th Cir.1996); *United States v. Molina*, 75 F.3d 600, 602 (10th Cir.1996). We must now determine whether this Court should consider the alleged trial error pursuant to the plain error doctrine. *See* W.Va.

---

**10.** The rule that an objection is forfeited if not raised at trial creates an incentive for a defendant to raise objections at trial where they may be most efficiently resolved—before the men and women more capable of handling them—the circuit court judges. Forfeiture respects the circuit court's institutional competence for resolving questions that may often be heavily laden with factual issues, avoids squandering judicial resources on numerous needless appeals, and prevents a defendant from strategically withholding objections in order to assert them on appeal and obtain a new trial. *See LaRock*, 196 W.Va. at 316, 470 S.E.2d at 635.

**11.** In the case at hand, the defendant charges the State solicited testimony regarding his post-*Miranda* silence, which testimony should not have been admitted into evidence. Under these specific facts, it was incumbent upon the defendant to object at trial before the testimony was uttered or to object contemporaneously with the testimony, move to have it stricken, and request a curative instruction. W.Va.R.Evid. 103(a)(1). The record is unequivocal, and the defendant concedes as much, that Rule 103(a)(1) was not complied with when the State solicited testimony regarding the defendant's post-*Miranda* silence.

R.Evid. 103(d); W.Va.R.Crim.P. 30 & 52.[12] We decide whether to exercise our discretion under plain error on a case-by-case basis, keeping in mind the general rule that we do not consider arguments raised for the first time on appeal. As we stated in *Miller*, 194 W.Va. at 17, 459 S.E.2d at 129, "[t]he 'plain error' doctrine grants appellate courts, [only] in the interest of justice, the authority to notice error to which no objection has been made."

█ Plain error review creates a limited exception to the general forfeiture policy pronounced in Rule 103(a)(1) of the West Virginia Rules of Evidence in that where a circuit court's error lessens or destroys one's faith in the judicial process, an appellate court has the discretion to correct error despite the defendant's failure to object. This salutary and protective device recognizes that in a criminal case, where a defendant's liberty interest is at stake, the rule of forfeiture should bend slightly, if necessary, to prevent a grave injustice.

█ In criminal cases, plain error is error which is so conspicuous that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting the error. *See United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816, 827 (1982). Under this exacting standard, we have no power to reverse unless a defendant demonstrates "there [is] (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *Miller*.[13] Once a defendant has established the first three requirements of *Miller*, we have the authority to correct the error, but we are not required to do so unless a fundamental miscarriage of justice has occurred. *See LaRock*, 196 W.Va. at 317, 470 S.E.2d at 636. Otherwise, we will not reverse unless, in our discretion, we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

█ Under the first principle of *Miller*, we must determine if, in fact, there was "error." "[D]eviation from a rule of law is error unless there is a waiver."[14] *Miller*, 194 W.Va. at 18, 459 S.E.2d at 129. In Syllabus Point 1 of *State v. Hamilton*, 177 W.Va. 611, 355 S.E.2d 400 (1987), we held:

" 'Under the Due Process Clause of the West Virginia Constitution, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.' Syllabus Point 1, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977)."

In *Hamilton*, the prosecutor did not cross-examine the defendant regarding his post-*Miranda* silence. Instead, the prosecutor asked a police officer on direct examination to testify about the defendant's post-*Miranda* silence. Although we did not find the testimony reversible error in *Hamilton*, this Court did acknowledge the *Boyd* holding was applicable to the facts of *Hamilton* to the extent that offering such testimony was error. In the case *sub judice*, the following exchange occurred on direct examination between the prosecutor and Officer Cecil:

"Q. Once you read James Marple his Miranda rights, would you describe his attitude or what he said at that time?

---

12. We pointed out in note 24 of *Miller*, 194 W.Va. at 18, 459 S.E.2d at 129, that "[t]he plain error rule contained in Rule 30 is identical to the plain error rule in Rule 52." (Citation omitted.)

13. The requirements that an error be "plain" and that it "affect substantial rights" limit the authority of the appellate court and prevent us from correcting forfeited errors that are either questionable or inconsequential. When viewed as a limitation, to circumvent forfeiture where an error is debatable, rather than as a measure of circuit court fault, the "plainness" inquiry must look to the error's certainty from the perspective of the appellate court.

14. Waiver refers to "the ' "intentional relinquishment or abandonment of a known right." ' " *Miller*, 194 W.Va. at 18, 459 S.E.2d at 129, *quoting United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508, 519 (1993), *quoting Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).

"A. He simply refused to acknowledge his rights. He wouldn't talk to us. He basically wasn't even paying attention to us. At that time we attempted not to talk to him or we did not attempt to talk to Mr. Marple.

*Hamilton* and *Boyd* inform us it was error for this exchange to occur before the jury. Although defense counsel failed to object to the testimony at trial, we find no evidence in the record to support application of the waiver doctrine.

■■■ The second requirement of the plain error analysis is that the circuit court's error be "plain," which in *Miller* we said is to be viewed as meaning nothing more than clear or obvious. *Miller*, 194 W.Va. at 18, 459 S.E.2d at 129. The United States Supreme Court explained in *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508, 519 (1993), that this requirement, at a minimum, prevents us from reversing for plain error unless the circuit court's error is clear under current law, *i.e.*, the law at the time of appellate review. Thus, we hold that for the purposes of the West Virginia's "plain error" rule, a "plain" error is one that is clear and uncontroverted at the time of appeal. After *Doyle*, *Boyd*, and *Hamilton*, there is no principled way we could suggest the error was not clear under current law. In the instant proceeding, it is "obvious" the State solicited testimony in a context that is barred under *Hamilton* and *Boyd*.

■■■ The third principle of *Miller* requires us to determine whether soliciting post-*Miranda* silence testimony affected the "substantial rights" of the defendant. In *Miller*, we explained this requirement calls for the same inquiry as a "harmless error" analysis, except that here the defendant has the burden of persuasion. "Normally, to affect substantial rights means that the error was prejudicial. It must have affected the outcome of the proceedings in the circuit court." *Miller*, 194 W.Va. at 18, 459 S.E.2d at 129. Harmless error inquiry in criminal cases is significantly more stringent than in civil cases. The hypothetical rational jury is irrelevant for appraising the prejudice of error in a criminal jury trial. Harmless error analysis in the appeal of a criminal case asks "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered ... was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182, 189 (1993). Accordingly, we hold that in determining whether the third prong of *Miller* has been satisfied, *i.e.*, whether the assigned error affected the "substantial rights" of the defendant, the defendant need not establish that in a trial without the error, a reasonable jury would have acquitted; rather, the defendant need only demonstrate that the jury verdict in this case was actually affected by the assigned but unobjected to error. We will now proceed to look at the facts of this case pursuant to the demands of the third principle of *Miller*.

■■■ The State called a total of twenty-eight witnesses in this case. The first witness called by the State was Officer Cecil. Officer Cecil was the only witness to comment on the defendant's post-*Miranda* silence. The State did not dwell on the issue beyond the one question to Officer Cecil nor did Officer Cecil go beyond the few remarks quoted above. The State did not address the issue of the defendant's post-*Miranda* silence during its closing argument. The evidence by the State in this case placed Tammy in the apartment of the defendant at the time she was shot. In fact, the State's evidence placed her in the defendant's bed, alongside the defendant when she was shot. There was evidence the defendant was heard stating: "I didn't want to kill her" and "I didn't want to hurt you." The State provided evidence that a gun was found 550 feet from the back door of the defendant's apartment. There was evidence the back door had been opened and blood was found on the doorknob. Expert testimony was provided that test firing of the gun and analysis thereafter established the bullet taken from Tammy's brain was fired from the weapon found near the defendant's apartment. The State called Ralph Robertson, a contractor who put in a new bathroom in the defendant's apartment prior to Tammy's death. Mr. Robertson testified that while he was in the defendant's

apartment he saw and handled a gun that was in the defendant's bedroom, lying on the headboard of the defendant's water bed. Mr. Robertson testified that the gun introduced into evidence as the weapon which killed Tammy was the same weapon he saw and handled in the defendant's bedroom. There was expert testimony that gunshot residue was found on a sample taken from the defendant's right hand and from a sample of the pants worn by the defendant on the night of Tammy's death. Finally, the defendant did not put on any evidence; instead, he elected to rest at the conclusion of the State's case-in-chief.

"We need not go further at this juncture." *Miller*, 194 W.Va. at 19, 459 S.E.2d at 130. *Miller*'s third principle disposes of this case.[15] In asking this Court to apply the plain error doctrine to this case, the defendant offers nothing more than the unpersuasive argument that the post-*Miranda* silence testimony "permitted the jury to draw an impermissible inference as to why the defendant did not offer any explanation of what had occurred." In view of all the admissible evidence introduced by the State, we believe the jury would have reached the same verdict absent the post-*Miranda* silence testimony, and we are in no way persuaded that the assigned error contributed to the conviction.

 Even had the defendant convinced us that the prerequisites of plain error were satisfied by demonstrating the circuit court erred, that the error was "plain," and that the error affected his "substantial rights," we still would not reverse. The exercise of the power to reverse under plain error is permissive, not mandatory. We are instructed by *Miller* that we should only reverse a criminal conviction, if in our discretion, we find the circuit court's error seriously affected the fairness, integrity, and public reputation of judicial proceedings. We explained in *LaRock* that merely because an error is "plain" and affects "substantial rights" does not, without more, satisfy this standard, else our discretion would be illusory. 196 W.Va. at 316, 470 S.E.2d at 635.

Here, the State presented evidence sufficient to convince any rational factfinder that the defendant was the person who killed the victim. In fact, the issue of the defendant's pretrial, post-*Miranda* silence was never made an issue or dwelled upon by the prosecution. Under these circumstances it would be a waste of judicial resources to retry this case based on the circuit court's failure to exclude the unobjected to post-*Miranda* silence evidence. As a result, we do not find a miscarriage of justice nor do we believe the circuit court's error brings into question the fairness, integrity, or reputation of judicial proceedings, and we decline the invitation to grant the defendant a new trial.

## IV.

## CONCLUSION

For the foregoing reasons, the defendant's conviction is affirmed.

Affirmed.

---

15. In *State v. Oxier*, 175 W.Va. 760, 338 S.E.2d 360 (1985), this Court, relying upon Syllabus Point 4 of *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975), took cognizance of plain error even though the defendant failed to object to the prosecutor's comments regarding the defendant's pretrial silence. 175 W.Va. at 761–63, 338 S.E.2d at 361–63. Because *Oxier* was decided before *Miller*, its precedential value is of little weight in that we did not evaluate *Oxier* under the legal principles that inform our opinion *sub judice*. In addition, *Oxier* is factually distinguishable. This Court specifically found the post-*Miranda* pretrial silence violation was prejudicial:

"In the present case, it cannot be said that the prosecutor was making a general statement in response to the defense attorney's argument in the same area. *Here, the prosecutor initiated the argument and proceeded to develop it in considerable detail, emphasizing to the jury that the defendant's failure to disclose his alibi prior to trial meant it was a lie.* Consequently, we conclude the prosecutor committed reversible error." 175 W.Va. at 762, 338 S.E.2d at 362. (Emphasis added).

As we suggested in the text of this opinion, cases under plain error are to be evaluated on a case-by-case basis. The circumstances that existed in *Oxier* simply are not present here and, for that reason, we find the error in the instant case is harmless.