IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

_____

No. 15-0543

_____

FILED

**October 11, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA
Respondent

v.

DAVID K.,
Petitioner

_____

Appeal from the Circuit Court of Wetzel County
The Honorable David W. Hummel, Jr., Judge
Criminal Case No. 15-F-4

AFFIRMED

_____

Submitted: September 14, 2016
Filed: October 11, 2016

Brett M. Ferro, Esq.
Public Defender Corporation for
the Second Judicial Circuit
Moundsville, West Virginia
Counsel for the Petitioner

Patrick Morrisey
Attorney General
David A. Stackpole
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.
JUSTICE BENJAMIN concurs and reserves the right to file a concurring Opinion.
JUSTICE LOUGHRY concurs, in part, and dissents, in part, and reserves the right to file a separate Opinion.
JUSTICE WORKMAN concurs, in part, and dissents, in part, and reserves the right to file a separate Opinion.

SYLLABUS BY THE COURT

1.      Pursuant to W.Va. Code § 62-6B-3(a) [2013], a circuit court may order the testimony of a child witness be given via live closed-circuit television upon (1) a written motion filed by the prosecuting attorney, the child's attorney, or the child's guardian ad litem and (2) the requisite findings of fact determined in accordance with W.Va. Code § 62-6B-3(b).

2.      Prior to permitting the trial testimony of a child witness to be given via live two-way closed-circuit television, the circuit court must conduct an evidentiary hearing and consider the necessity of allowing such testimony in light of the five factors contained in W.Va. Code § 62-6B-3(c) [2013].  Thereafter, the circuit court must find by clear and convincing evidence that: (1) The child is otherwise competent; (2) Absent the use of live, closed-circuit television, the child witness will be unable to testify due solely to being required to be in the physical presence of the defendant while testifying; (3) The child witness can only testify if live, two-way closed-circuit television is used in the trial; and (4) The State's ability to proceed against the defendant without the child witness' live testimony would be substantially impaired or precluded. W.Va. Code § 62-6B-3(b) [2013].

3.      Pursuant to W.Va. Code § 62-6B-3(d) [2013], a circuit court considering whether to allow a child witness to testify via live closed-circuit television

i

shall appoint a psychiatrist or a licensed psychologist with at least five years of clinical experience who shall provide the court with an expert opinion, to a reasonable degree of professional certainty, as to whether the child witness will suffer severe emotional harm, be unable to testify based solely on being in the physical presence of the defendant while testifying, and that the child witness does not evidence signs of being subjected to undue influence or coercion. The opinion of the expert psychiatrist or licensed psychologist must be filed with the court at least thirty days prior to the final evidentiary hearing and the defendant shall be allowed to review this opinion and present his/her own expert opinion on the issue.

4. Pursuant to W.Va. Code § 62-6B-4(a) [2013], if the circuit court determines that a child witness may testify via live closed-circuit television, the defendant may elect to absent himself from the courtroom during the child witness' testimony. If the defendant so elects, the child witness is required to testify in the courtroom.

5. Pursuant to W.Va. Code § 62-6B-4(c) [2013], if a child witness is permitted to testify via live closed-circuit television, the circuit court must instruct the jury, unless the defendant waives such an instruction, that "the use of live, closed-circuit television is being used solely for the child's convenience, that the use of the medium cannot as a matter of law and fact be considered as anything other than being for the

convenience of the child witness and that to infer anything else would constitute a violation of the oath taken by the jurors."

Chief Justice Ketchum:

Petitioner David. K. appeals following his conviction on two counts of felony sexual assault and two counts of felony sexual abuse by a custodian. These convictions stem from an incident involving David K.'s teenage stepdaughter, A.R. During the trial, A.R. began testifying in-court but became unresponsive when the State questioned her about David K.'s alleged sexual abuse. Thereafter, the circuit court consulted with counsel for the State and David K., and ordered that A.R. testify by live closed-circuit television. Trial counsel for David K. did not object to A.R. testifying by live closed-circuit television

On appeal, David K. asserts that the circuit court erred by ordering A.R. to testify by live closed-circuit television. After review, we affirm David K.'s convictions.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2015, a Wetzel County Grand Jury indicted David K. on three felony counts of sexual assault in the third degree in violation of W.Va. Code § 61-8B-5(a)(2) [2000], and three felony counts of sexual abuse by a custodian in violation of W.Va. Code § 61-8D-5(a) [2010]. These six felony offenses were based on one alleged incident in which David K. had sexual contact with his step-daughter, A.R., who was fourteen-years-old at the time of the alleged incident.

1

The prosecutor met with A.R. a few days before the trial. The prosecutor stated that during this private meeting A.R. "was able to articulate what happened. It took about an hour to get her there, but she was able to articulate." While it took A.R. an hour to articulate what happened during this private meeting, the prosecutor did not file a motion with the circuit court requesting that A.R. testify by closed-circuit television during the trial.

During the trial, Sergeant Brian Collins, a West Virginia State Policeman, testified that he conducted an interview with David K. in April 2014 in which David K. admitted that he "had sex" with A.R. on one occasion in the living room of his residence. When asked how old A.R. was at the time this incident occurred, David K. stated, "fifteen, I mean fourteen." David K. further stated that he and A.R. were planning on getting married once she turned eighteen. Sergeant Collins prepared a written report of this interview that David K. signed.[1] Sergeant Collins testified that after this interview, he drove David K. back to his residence in a police cruiser. A video recording of this trip in the police cruiser was made and played for the jury. David K. made incriminating statements while in the police cruiser, including the following: (1) "I should be put away

_____

[1] The written statement prepared by Sergeant Collins was in a question and answer format. Sergeant Collins wrote down the questions and answers and David K. signed the bottom of each page of the written statement.

2

for life," (2) "I wish I could go back in time and change what happened," and (3) "there's some pretty sick people out there, and I just realized I'm one of them."[2]

Another West Virginia State Policeman, Sergeant Charlie Kush, testified that he also conducted an interview with David K. in April 2014, in which David K. admitted that he had sexual intercourse with A.R. Mary Jane R., A.R.'s mother and David K.'s wife, testified that David K. admitted to her that he had sexually abused A.R. on one occasion.

A.R. also testified during the trial. She was fifteen years old at the time of the trial. A.R. answered a few preliminary questions but became unresponsive when the State asked her about the alleged sexual abuse by David K. After A.R. failed to reply to a number of questions, the trial judge asked the parties to approach the bench, whereupon the trial judge stated:

> The transcript reveals that the testimony has been essentially nil at this point. The young lady appears to be becoming traumatized – my words – as [sic] this traditional method of testimony.
>
> What I suggest and will implement, subject to counsels' thoughts, is having her taken to magistrate court . . . have her testify by audio/video system that the court utilizes in magistrate court for purposes of arraignment, and the

---

[2] A transcript of this video recording is not in the appendix-record. However, when David K. was asked during cross-examination whether the video in the police cruiser included the three statements set forth above, David K. agreed that he had made those statements.

3

circuit court uses for reasons, and have her testify via video link. Any objections by the State?

Neither party objected to the trial judge's plan to have A.R. testify via live closed-circuit television. Thereafter, A.R. was taken to the magistrate court and testified via live closed-circuit television that was broadcast in the courtroom in front of the jury. During her live closed-circuit television testimony, A.R. testified that David K. had sexual contact with her. Following her testimony, the State rested. At the conclusion of the State's case, the circuit court dismissed counts five and six of the indictment.[3]

The defense called the defendant, David K., to testify. He testified that he was never alone with A.R. and denied having sexual contact with her. David K. did not deny that he confessed to sexually abusing A.R. when he was questioned by the police in April 2014. However, he stated that this confession "was false" and explained that he gave this false confession because "I just wanted to go home." Further, David K. was asked if he remembered telling his wife that he sexually abused A.R. and he stated, "I don't know. I really don't know." During cross-examination, David K. did not dispute that he had made incriminating statements while he was in the police cruiser.

The jury convicted David K. of the four remaining counts contained in the indictment. Thereafter, David K. filed a motion for a new trial, alleging that the trial

---

[3] Counts five and six alleged that David K. forced A.R. to engage in oral sex. A.R.'s testimony did not support this allegation and the circuit court dismissed these two charges.

4

judge's *sua sponte* decision to allow A.R. to testify via live closed-circuit television was improper under W.Va. Code § 62-6B-1 [2001] *et seq.* After conducting a hearing, the circuit court denied David K.'s motion for a new trial. It thereafter sentenced David K. to an effective incarceration term of twenty to forty years. David K. appeals the circuit court's order denying his motion for a new trial.

## II.

## STANDARD OF REVIEW

This Court has previously held that:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). We have further recognized that "[i]t is well settled that a trial court's rulings on the admissibility of evidence, 'including those affecting constitutional rights, are reviewed under an abuse of discretion standard.'" *State v. Kaufman*, 227 W.Va. 537, 548, 711 S.E.2d 607, 618 (2011) (citing *State v. Marple*, 197 W.Va. 47, 51, 475 S.E.2d 47, 51 (1996)).

## III.

## ANALYSIS

5

The issue in this case is whether the circuit court erred when it ordered the child witness, A.R., to testify via live closed-circuit television. David K. argues that his rights under the Confrontation Clause—set forth in the Sixth Amendment to the United States Constitution and in Section 14 of Article III of the West Virginia Constitution—were violated when the circuit court, *sua sponte*, ordered A.R. to testify via live closed-circuit television. David K. asserts that the circuit court failed to follow the mandatory procedural safeguards set forth in W.Va. Code § 62-6B-1 *et seq.* that must be observed before a child witness may testify via live closed-circuit television.

By contrast, the State argues that the procedural safeguards contained in W.Va. Code § 62-6B-1 *et seq.* were "not triggered as there were no pre-trial motions regarding the use of closed-circuit television for the child victim's testimony. The Trial Court's decision to use closed-circuit testimony did not fall under [W.Va. Code § 62-6B-1 *et seq.*]." Rather, the State asserts that the circuit court's decision to permit A.R. to testify via live closed-circuit television was proper under the court's "inherent authority . . . to manage issues in the courtroom during trial." Further, the State contends that any error committed by the trial court was not plain error, and did not affect David K.'s substantial rights.

At the outset, we note that neither party cited or discussed *Maryland v. Craig*, 497 U.S. 836 (1990), a case in which the United States Supreme Court addressed the Confrontation Clause in the context of whether a child witness in a sexual abuse case may testify via live closed-circuit television. Our analysis of this issue is guided by the

6

Supreme Court's holding in *Maryland v. Craig*, and by W.Va. Code § 62-6B-1 *et seq.*, a statute that was enacted after the Supreme Court's ruling in *Maryland v. Craig*. We begin our analysis with a brief review of the Confrontation Clause.

The Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution guarantee an accused the right to confront and cross-examine witnesses. The Confrontation Clause contained in the Sixth Amendment provides: "In all criminal prosecutions, the accused shall . . . be confronted with the witnesses against him[.]" Likewise, the Confrontation Clause contained in the West Virginia Constitution, Section 14 of Article III, provides that in the "[t]rials of crimes, and misdemeanors . . . the accused shall be . . . confronted with the witness against him[.]"

The United States Supreme Court examined whether a child witness testifying by live closed-circuit television violates the Confrontation Clause in *Maryland v. Craig*, *supra*. In *Craig*, the Court rejected a Confrontation Clause challenge to a Maryland statute that allowed a child witness in a sexual abuse case to testify via live closed-circuit television. 497 U.S. at 860. The Court explained that the Confrontation Clause "reflects a preference for face-to-face confrontation at trial," but that this preference "must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849 (internal quotations omitted). It emphasized, however, that the preference is a strong one and that a defendant's Sixth Amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where

7

denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id*. at 850.

The Supreme Court in *Craig* set out three findings that a court must make before allowing a child witness to testify by live closed-circuit television. *Id*. at 855-56. These findings must be made after a court holds an evidentiary hearing and considers and determines on a case-by-case basis whether the use of live closed-circuit television testimony is necessary to protect the welfare of a particular child. The Supreme Court described this process and the three specific findings that must be made as follows:

> The requisite finding of necessity must of course be a case-specific one: **The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.** Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. **Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify.**

*Id*. at 855-56 (internal citation and quotation omitted, emphasis added).

Eleven years after the Supreme Court's decision in *Maryland v. Craig*, our Legislature enacted W.Va. Code § 62-6B-1, entitled "Protection and Preservation of

8

Statements and Testimony of Child Witness." Trial Court Rule 14.03(b) [2003] instructs a circuit court in a criminal proceeding[4] to follow this statute. Trial Court Rule 14.03(b) states: "The court may use videoconferencing to obtain the testimony of a child witness in accordance with West Virginia Code § 62-6B-1 to -4."

West Virginia Code § 62-6B-1 *et seq.* allows a child[5] to testify outside the physical presence of a defendant when required by "the interests of justice." The statute seeks to balance the welfare of a child with the defendant's constitutional right to confront his/her accuser. The purpose of the statute is set forth explicitly in W.Va. Code 62-6B-1 [2001]:

> The Legislature hereby finds that there are rare occasions when the interests of justice cannot be served because a child who is alleged to be the victim of certain offenses is unable to testify while in the physical presence of the defendant in the courtroom.
>
> The Legislature further finds that the constitutional right of the accused to be confronted with the witnesses against him or her must be protected and that this constitutional guarantee can be protected while, at the same time, allowing a child to testify outside of the physical presence of a defendant in the courtroom.

---

[4] The title of Trial Court Rule 14.03 is "Criminal Proceedings in Circuit Courts."

[5] West Virginia Code § 62-6B-2(1) [2013] defines "[c]hild witness" as "a person under the age of sixteen years of age who is or will be called to testify in a criminal matter concerning an alleged violation of the provisions of sections three, four, five and seven, article eight-b, chapter sixty-one of this code in which the child is the alleged victim."

9

The Legislature further finds that a child, more so than an adult, may be subject to coercion and pressure by interested adults and the interests of justice would be served by requiring, unless infeasible, memorialization of child victim statements in certain criminal matters.

In order to accomplish the twin goals of protecting child victims when justice so requires and ensuring the constitutional right of a defendant to confront his/her accuser, W.Va. Code § 62-6B-3(a) requires "the prosecuting attorney, the child's attorney, or the child's guardian ad litem" to file a written motion requesting that a child witness testify via live closed-circuit television. West Virginia Code § 62-6B-3(a) does not permit a trial judge to *sua sponte* order a child witness to testify via live closed-circuit television.

After "the prosecuting attorney, the child's attorney, or the child's guardian ad litem" files a motion requesting that a child testify via live closed-circuit television, the circuit court must conduct an evidentiary hearing and make four specific findings. This requirement is set forth in W.Va. Code § 62-6B-3(b). It states:

Prior to ordering that the testimony of a child witness may be taken through the use of live, two-way closed circuit television, the circuit court must find by clear and convincing evidence, after conducting an evidentiary hearing on the issue, that:

1) The child is otherwise competent;

2) That, absent the use of live, closed-circuit television the child witness will be unable to testify due solely to being required to be in the physical presence of the defendant while testifying;

10

3) The child witness can only testify if live, two-way closed-circuit television is used in the trial; and

4) That the state's ability to proceed against the defendant without the child witness' live testimony would be substantially impaired or precluded.

Prior to making the four specific findings required by W.Va. Code § 62-6B-3(b), the circuit court must consider the five factors set forth in W.Va. Code § 62-6B-3(c):

(1) The age and maturity of the child witness;

(2) The facts and circumstances of the alleged offense;

(3) The necessity of the child's live testimony to the prosecution's ability to proceed as well as any prejudice to the defendant by allowing testimony through closed-circuit television;

(4) Whether or not the facts of the case involve the alleged infliction of bodily injury to the child witness or the threat of bodily injury to the child or another; and

(5) Any mental or physical handicap of the child witness.

Additionally, the circuit court shall appoint a psychiatrist or psychologist to provide the court with an expert opinion. This expert psychiatrist or psychologist must file a written report with the circuit court at least thirty days prior to the evidentiary hearing. This requirement is set forth in W.Va. Code § 62-6B-3(d):

In determining whether to allow a child witness to testify through live, closed-circuit television the court shall appoint a psychiatrist or a licensed psychologist with at least five years clinical experience who shall serve as an advisor or friend of the court to provide the court with an expert opinion as to whether, to a reasonable degree of professional

11

certainty, the child witness will suffer severe emotional harm, be unable to testify based solely on being in the physical presence of the defendant while testifying and that the child witness does not evidence signs of being subjected to undue influence or coercion. The opinion of the psychiatrist or licensed psychologist shall be filed with the circuit court at least thirty days prior to the final hearing on the use of live, closed-circuit television and the defendant shall be allowed to review the opinion and present evidence on the issue by the use of an expert or experts or otherwise.

Further, if a court determines that a child witness may testify via live closed-circuit television, the defendant may "elect to absent himself from the courtroom during the child witness' testimony. If the defendant so elects the child shall be required to testify in the courtroom." W.Va. Code § 62-6B-4(a) [2001]. The defendant must then be provided with a live, two-way television connection to the courtroom. *See* W.Va. Code § 62-6B-4(b)(2). Finally, if the use of live closed-circuit television is used, the circuit court must instruct the jury, unless the defendant waives such an instruction, that "the use of live, closed-circuit television is being used solely for the child's convenience, that the use of the medium cannot as a matter of law and fact be considered as anything other than being for the convenience of the child witness and that to infer anything else would constitute a violation of the oath taken by the jurors." W.Va. Code § 62-6B-4(c).

Based on the foregoing, we hold that pursuant to W.Va. Code § 62-6B-3(a), a circuit court may order the testimony of a child witness be given via live closed-circuit television upon (1) a written motion filed by the prosecuting attorney, the child's attorney, or the child's guardian ad litem and (2) the requisite findings of fact determined in accordance with W.Va. Code § 62-6B-3(b).

12

Prior to permitting the trial testimony of a child witness to be given via live two-way closed-circuit television, the circuit court must conduct an evidentiary hearing and consider the necessity of allowing such testimony in light of the five factors contained in W.Va. Code § 62-6B-3(c) [2013]. Thereafter, the circuit court must find by clear and convincing evidence that: (1) The child is otherwise competent; (2) Absent the use of live, closed-circuit television, the child witness will be unable to testify due solely to being required to be in the physical presence of the defendant while testifying; (3) The child witness can only testify if live, two-way closed-circuit television is used in the trial; and (4) The State's ability to proceed against the defendant without the child witness' live testimony would be substantially impaired or precluded. W.Va. Code § 62-6B-3(b) [2013].

Pursuant to W.Va. Code § 62-6B-3(d), a circuit court considering whether to allow a child witness to testify via live closed-circuit television shall appoint a psychiatrist or a licensed psychologist with at least five years of clinical experience who shall provide the court with an expert opinion, to a reasonable degree of professional certainty, as to whether the child witness will suffer severe emotional harm, be unable to testify based solely on being in the physical presence of the defendant while testifying, and that the child witness does not evidence signs of being subjected to undue influence or coercion. The opinion of the expert psychiatrist or licensed psychologist must be filed with the court at least thirty days prior to the final evidentiary hearing and the defendant

13

shall be allowed to review this opinion and present his/her own expert opinion on the issue.

Further, pursuant to W.Va. Code § 62-6B-4(a), if the circuit court determines that a child witness may testify via live closed-circuit television, the defendant may elect to absent himself from the courtroom during the child witness' testimony. If the defendant so elects, the child witness is required to testify in the courtroom.

Finally, pursuant to W.Va. Code § 62-6B-4(c), if a child witness is permitted to testify via live closed-circuit television, the circuit court must instruct the jury, unless the defendant waives such an instruction, that "the use of live, closed-circuit television is being used solely for the child's convenience, that the use of the medium cannot as a matter of law and fact be considered as anything other than being for the convenience of the child witness and that to infer anything else would constitute a violation of the oath taken by the jurors."

Applying this holding to the present case, we note that no written motion was filed requesting that A.R. testify via live closed-circuit television. A.R. met with the prosecutor a few days before the trial and it took her an hour to articulate what happened during this private meeting. However, the prosecutor did not file a motion with the circuit court requesting that A.R. testify by closed-circuit television. Because no motion was filed, the circuit court did not have the opportunity to hold an evidentiary hearing and make the required findings set forth in W.Va. Code § 62-6B-3(b). Further, because no

14

motion was filed, the circuit court was unable to appoint a psychiatrist or psychologist to render a timely expert opinion on whether A.R. should be permitted to testify via live closed-circuit television. Also, after the circuit court ruled that A.R. could testify via live closed-circuit television, David K. was not given the option to "absent himself from the courtroom." If David K. chose to "absent himself" from the courtroom, A.R. would have been required to continue testifying in the courtroom pursuant to W.Va. Code § 62-6B-4(a).

While the numerous procedural safeguards contained in W.Va. Code § 62-6B-1 *et seq.* were not followed by the circuit court, counsel for David K. did not object to the circuit court's ruling that A.R. testify via live closed-circuit television. Thus, on appeal, David K. argues that this Court should review these errors under a plain error analysis. The errors in this case involve David K.'s Sixth Amendment confrontation rights as set out by the Supreme Court in *Maryland v. Craig*.

This Court has held: "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995); *see also* Syllabus Point 2, *State v. White*, 231 W.Va. 270, 744 S.E.2d 668 (2013). Moreover, this Court has held that "[a]lleged errors of a constitutional magnitude will generally trigger a review by this Court under the plain error doctrine." *State v. Salmons*, 203 W.Va. 561, 571 n. 13, 509 S.E.2d 842, 852 n. 13 (1998). Similarly, in Syllabus Point 4 of *State v. Starr*, 158

15

W.Va. 905, 216 S.E.2d 242 (1975), this Court explained: "Although it is a well-settled policy that the Supreme Court of Appeals normally will not rule upon unassigned or imperfectly assigned errors, this Court will take cognizance of plain error involving a fundamental right of an accused which is protected by the Constitution." In *State v. Lightner*, 205 W.Va. 657, 659, 520 S.E.2d 654, 662 (1999), this Court stated, "In criminal cases, plain error is error which is so conspicuous that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it."

We have also stated: "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syllabus Point 5, *State ex rel. Grob v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975). Indeed, an error involving a deprivation of a constitutional right may be regarded as harmless only "if there is no reasonable possibility that the violation contributed to the conviction." Syllabus Point 20, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974). In Syllabus Point 3 of *State v. Frazier*, 229 W.Va. 724, 735 S.E.2d 727 (2012), this Court explained: "In a criminal case, the burden is upon the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *See also Chapman v. California*, 386 U.S. 18, 24 (1967) (the burden is on "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."). With the foregoing in mind, we proceed to consider whether it was plain error for the circuit court to permit

16

A.R. to testify via live closed-circuit television without following the procedural safeguards contained in W.Va. Code § 62-6B-1 *et seq.*

Under the first principle of the plain error doctrine outlined in *Miller*, we must determine if there was error. "Deviation from a legal rule is 'error' unless the rule has been waived." *U.S. v. Olano*, 507 U.S. 725, 732-33 (1993). Waiver is different from forfeiture:

> Under the "plain error" doctrine, "waiver" of error must be distinguished from "forfeiture" of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is "plain." To be "plain," the error must be "clear" or "obvious."

Syllabus Point 8, *Miller*, *supra*. As the circuit court noted in its ruling denying David K.'s motion for a new trial, "I do not find that the defendant waived. If there is clear error, there is no waiver. Can't waive clear error." We agree. For the reasons set forth above, we find the circuit court's failure to follow the numerous procedural safeguards, set forth in W.Va. Code § 62-6B-1 *et seq.*, before permitting A.R. to testify via live

17

closed-circuit television was error.[6] These procedural safeguards are contained not only in the aforementioned statute, but are also required by Trial Court Rule 14.03(b), and by the Supreme Court's holding in *Maryland v. Craig*.

Having determined that error existed in the proceedings below, we move on to the second requirement of *Miller* and determine if the circuit court's error was plain, which simply means clear or obvious. *Miller*, *Id*. at 18, 459 S.E.2d at 129. The numerous errors regarding the failure to provide David K. with the procedural safeguards contained in W.Va. Code § 62-6B-1 *et seq*., constitute clear error. As stated, no written motion, which is required by W.Va. Code 62-6B-3(a), was filed requesting that A.R. testify via live closed-circuit television. Thus, the circuit court was not able to conduct the mandatory evidentiary hearing and make the findings required by W.Va. Code § 62-6B-3(b). Similarly, the circuit court was unable to appoint a psychologist or psychiatrist as required by W.Va. Code § 62-6B-3(d). Finally, the circuit court did not give David K. the option of leaving the courtroom once it determined that A.R. should testify via live closed-circuit television. David K. should have been given the option of leaving the courtroom under W.Va. Code § 62-6B-4(a). For these reasons, the error in this case is clear.

---

[6] We emphasize again that the circuit court's error was largely due to the failure of a written motion being filed pursuant to W.Va. Code § 62-6B-3(a). Because such a motion was not filed, the circuit court did not have the opportunity to comply with the requirements contained in W.Va. Code § 62-6B-1 *et al*.

18

We now turn to the third and fourth *Miller* requirements. Justice Cleckley addressed the third prong of *Miller* in Syllabus Point 3 of *State v. Marple*, 197 W.Va. 47, 475 S.E.2d 47 (1996):

> In determining whether the assigned plain error affected the "substantial rights" of a defendant, the defendant need not establish that in a trial without the error a reasonable jury would have acquitted; rather, the defendant need only demonstrate the jury verdict in his or her case was actually affected by the assigned but unobjected to error.

The fourth *Miller* principle, regarding the fairness, integrity, and reputation of judicial proceedings, "requires a case-by-case exercise of discretion." *State v. LaRock*, 196 W.Va. 294, 317, 470 S.E.2d 613, 636 (1996). In *State v. Marple*, 197 W.Va. at 52, 475 S.E.2d at 52, we found that:

> Once a defendant has established the first three requirements of *Miller*, we have the authority to correct the error, but we are not required to do so unless a fundamental miscarriage of justice has occurred. Otherwise, we will not reverse unless, in our discretion, we find the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

(Citations omitted).

In the present case, the State presented four different instances in which David K. confessed to sexually abusing A.R.: (1) in an oral statement provided to Sergeant Collins, which was reduced to writing and signed by David K.; (2) in an oral statement made to Sergeant Kush; (3) in an oral statement made in the police cruiser that was recorded on video and played for the jury; and (4) in a statement made to his wife. While David K. testified at trial that he did not sexually abuse A.R., his only explanation

19

for the written confession he provided to the police was that he gave a "false confession" because he "wanted to go home." We note that David K. was not under arrest when he made this statement to the police. Further, David K. did not dispute that he made incriminating statements while in the police cruiser that were recorded on video. Also, he did not dispute that he told his wife he sexually abused A.R., instead, when asked if he had made this statement, he testified, "I don't know."

Next, we note that the circuit court's deviations from W.Va. Code § 62-6B-1 *et seq.* did not prevent counsel for David K. from confronting his accuser, A.R. Counsel for David K. did not object to the circuit court's suggestion that A.R. testify by closed-circuit television. Importantly, counsel for David K. conducted a full cross-examination of A.R., and the jury had the opportunity to assess A.R.'s testimony and demeanor during this cross-examination.

In sum, the State presented evidence of four different instances in which David K. confessed to sexually abusing A.R., including incriminating statements he made that were recorded on video and in a written confession that he signed. Further, the complained of error occurred without an objection from defense counsel, and did not prevent David K. from confronting and cross-examining his accuser, A.R. We therefore find that David K. has failed to demonstrate that "the jury verdict in his case was actually affected by the assigned but unobjected to error." We conclude that under the circumstances of this case—in which the State presented four different instances of David K. confessing to the crime, and in which counsel for David K. cross-examined A.R.—the

circuit court's failure to follow the procedural safeguards contained in W.Va. Code § 62-6B-1 *et seq.* was harmless error. For these reasons, we find that David K. cannot satisfy the third *Miller* requirement.

Assuming arguendo that David K. could satisfy the third requirement of *Miller*, we find that because of the overwhelming evidence of David K.'s guilt, including the four instances in which he confessed to sexually abusing A.R., this is not a case where a "fundamental miscarriage of justice has occurred." This conclusion is bolstered by the fact that the error in this case occurred without an objection from defense counsel. Further, the error did not prevent counsel for David K. from cross-examining A.R. Because counsel for David K. cross-examined A.R., the jury was able to fully assess her credibility and demeanor. Similarly, we find that the error in this case is not one that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." The State has proven beyond a reasonable doubt that the "constitutional error complained of did not contribute to the verdict obtained."

**IV.**

**CONCLUSION**

Based on the foregoing, we affirm David K.'s convictions.

Affirmed.

21