# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 17-0711** (Berkeley County 12-F-56)

**Jeffrey A. Hazlett,**
**Defendant Below, Petitioner**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jeffrey A. Hazlett, by counsel Ben J. Crawley-Woods, appeals the Circuit Court of Berkeley County's July 13, 2017, order revoking his supervised release and sentencing him to twenty-three years of incarceration, which represents the balance of his twenty-five years of extended supervision. The State of West Virginia, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding clear and convincing evidence that he violated the terms and conditions of his supervised release and in not allowing him to confront his accuser.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 26, 2013, petitioner was convicted of third-degree sexual assault. The circuit court sentenced him to not less than one year nor more than five years of incarceration and imposed a twenty-five-year period of supervised release, which was to commence upon his release from incarceration. Petitioner was released from incarceration and began his supervised release on April 30, 2016.

On March 31, 2017, the Berkeley County Probation Department ("Probation Department") filed a petition for revocation of petitioner's supervised release on March 31, 2017.[1] This petition alleged that petitioner engaged in new criminal conduct, namely, first-degree

---

[1]This was the third such petition. The Probation Department filed the first petition to revoke petitioner's supervised release on May 23, 2016, almost immediately after being placed on supervised release. The petition alleged that petitioner used heroin. Petitioner admitted to

(continued . . .)

1

sexual abuse. On June 5, 2017, the circuit court held a revocation hearing. Trooper Damien M. Hart testified that the alleged victim's mother reported to him on June 1, 2016, that her child had been sexually abused by petitioner about one month prior to that date.[2] Trooper Hart coordinated an interview of the child, who was seven years old, by the Child Advocacy Center ("CAC"). During her CAC interview, for which Trooper Hart was present, the child reported that petitioner sexually abused her in her father's vehicle.[3] The vehicle was parked at a gas station, petitioner and the child were in the back seat, the father's girlfriend was in the front passenger seat, and the father was inside the gas station. The child's CAC interview was admitted as evidence at the hearing.

Trooper Hart also recounted speaking with petitioner during the course of his investigation. Petitioner reported to Trooper Hart that he was not in the car with the father at any time the child was also present in the vehicle. Trooper Hart also spoke with the child's father, however, who said that petitioner had been in the vehicle with the child. During petitioner's counsel's cross-examination of Trooper Hart, he acknowledged that the child's father was not cooperative and "didn't really answer" when asked to corroborate the child's assertion in her CAC interview that she reported petitioner's abuse to him. Trooper Hart also did not verify the color of the father's car, interview the child's brother, or interview the father's girlfriend, who was reportedly in the vehicle when the abuse took place.

The child's mother also offered testimony at the June 5, 2017, hearing. The mother corroborated the father's statement that petitioner was, in fact, in the father's vehicle when the father picked up the child for visitation. The mother also testified that she was prompted to ask her daughter whether anyone had touched her inappropriately because her daughter had been "acting out," including wetting herself, biting her fingernails until her fingers bled, and "doing things inappropriately under the blankets" with the mother's nephew. The mother recounted that, in response to her inquiry, the child disclosed that petitioner touched her when they were together in the back seat of the child's father's car. The child told her mother that the father

---

using heroin, and the circuit court imposed time served as a sanction. Petitioner was also readmitted to supervised release.

On August 26, 2016, the Probation Department filed a second petition to revoke, which alleged that petitioner continued to use drugs. Upon petitioner's admission to using drugs, the circuit court ordered him to serve one year of incarceration. Petitioner was readmitted to supervised release following his release from incarceration.

[2]Trooper Hart listed May 1, 2016, as the date of the offense, but he testified at the revocation hearing that "[w]e don't know the exact date that it happened. It happened a month prior is what we figured." Trooper Hart acknowledged that the May 1, 2016, date was a "ballpark" figure.

[3]The child's parents divorced in December of 2015. The father was exercising visitation at the time of the alleged sexual abuse.

turned around at one point, but petitioner quickly stopped. The child said that her father parked the car, he and his girlfriend entered the gas station, and, while they were in the store, petitioner again touched the child. The child informed her mother that the child's brother was also in the car while the abuse took place, but the brother reported to the mother that he had not seen anything. The child's mother testified that she called the child's father after the child made the disclosure. The child's mother informed the father that the child stated she had told the father of the abuse, but he denied having been told.

On cross-examination, the child's mother testified that she believed the father drove a red Pontiac at the time the abuse took place, but shortly thereafter, he purchased a blue convertible. The Pontiac had only two backseats with a plastic console in between them, yet the child reported that she, her brother, and petitioner were all in the backseat at the time petitioner sexually abused her. The mother also testified that the child's "acting out," including the sexual behavior, began in the December of 2015 to January of 2016 time frame and that the incidents involving her nephews occurred shortly before May of 2016. On redirect, however, the mother clarified that she does not recall exactly when the child's sexual acting out began, only that "it was cold out." She testified that her daughter told her that the second time petitioner touched her, "she hid in her coat[.]" Ultimately, she testified that winter into spring was an accurate time frame for the events.

The final witness to testify at the June 5, 2017, hearing was Clyde Moats Jr. Mr. Moats, testifying on petitioner's behalf, stated that he was present for a conversation between the child's father and petitioner in which the child's father informed petitioner of the accusations his child had made, but the father told petitioner "don't even worry about it. It's all BS anyways."

Following Mr. Moats's testimony, the parties detailed difficulty in serving subpoenas on several witnesses; accordingly, the circuit court granted a continuance to serve these additional witnesses. The parties appeared on July 10, 2017, to resume the hearing on the third revocation petition. The child's father's former girlfriend testified that she was no longer romantically involved with the child's father, but she recalled dating him and recalled his children. She testified that she was never in the car with the children, their father, and petitioner. Another individual, Richard Mann, testified that the child's father discussed the allegations against petitioner and characterized them as "bull crap."

The child's father also offered testimony on July 10, 2017. He confirmed that petitioner was present "[a] few times" when he picked his children up from their mother's home to exercise visitation. The father also testified that he "believed" his former girlfriend was present with him and petitioner "[o]n a few occasions" when he picked up his children between March and May of 2016. The father recounted that he drove a red Pontiac in March and April of 2016, and he began driving a blue Chrysler in May of 2016. Although three adults would have been unable to sit in the backseat of the Pontiac, he testified that one grown up and two children could have fit. If his former girlfriend and petitioner were with him to pick up the children, the former girlfriend took the front passenger seat, and petitioner would sit in the back with the children. The child's father was asked whether he believed the allegations against petitioner. The father testified, "I can't say without a shadow of a doubt, but with everything I recently have heard and found out, I think it did [occur]." Finally, the father testified that he recalled being at the gas station with petitioner,

3

his children, and his ex-girlfriend at least once. He did not recall which car he was in, but he believes it would have been in "[t]he March or April or May" of 2016 time period.

At the close of evidence and argument, the circuit court found that the State proved by clear and convincing evidence that petitioner violated the terms and conditions of his supervised release by engaging in new criminal conduct. The circuit court revoked petitioner's supervised release and sentenced him to twenty-three years of incarceration, which amounted to the balance of his supervised release term. The circuit court further found good cause for not requiring the child to testify in person. On July 13, 2017, the circuit court entered an order memorializing these findings, and it is from this order that petitioner appeals.

West Virginia Code § 62-12-26(g) provides that

[t]he court may: . . . . (3) Revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release if the court, pursuant to the West Virginia Rules of Criminal Procedure applicable to revocation of probation, finds by clear and convincing evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this subdivision may not be required to serve more than the period of supervised release[.]

Additionally, we review sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997); Syl. Pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

Petitioner alleges two errors on appeal. First, petitioner contends that the circuit court erred in finding clear and convincing evidence that he inappropriately touched the child. Petitioner highlights discrepancies in the evidence concerning the color of the vehicle in which the abuse occurred, whether the child's brother or father's girlfriend was present in the vehicle during the abuse, and whether the child informed her father of the abuse. Petitioner argues that "[t]he only firm belief that any rational factfinder could reach based on the evidence is that the little girl was inappropriately touched by somebody[,]" but that there was insufficient evidence presented that he was the culprit. Petitioner further argues that the child's mother caught her nephew and the child engaging in sexually inappropriate behavior, but "[m]aking a friend of the girl's father the scapegoat put the mother in an advantageous position for custodial purposes" in the mother and father's divorce proceeding.

We find that the evidence detailed above presented a sufficient basis for the circuit court to conclude that petitioner engaged in new criminal conduct. The child disclosed petitioner's abuse to her mother, who testified during the revocation hearing, and again during her CAC interview. The circuit court noted that, upon review of the CAC interview, it "observed the child and her demeanor, maturity, and ability to relay details of the sexual abuse." The court further found that the "forensic evaluation was technically proficient and age appropriate to the child's skill and abilities; it was free from leading or suggestive questioning." Minor discrepancies in the

evidence, such as the color of the child's father's vehicle, do little to discredit the child's testimony of the abuse, particularly where the circuit court heard all of the evidence, including that identified as problematic by petitioner, and nonetheless found the allegations to be credible.[4] It is well settled that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). Accordingly, we find no error in the circuit court's conclusion that there was clear and convincing evidence that petitioner engaged in new criminal conduct.

Petitioner's second assignment of error concerns the circuit court's failure to allow him to cross-examine the minor child. Petitioner argues that the child's recorded interview, which only documented the child's allegations, was no substitute for cross-examination. Petitioner asserts that, per West Virginia Code § 62-6B-3(a), the child's testimony should have been "taken at a pretrial proceeding or at trial through the use of live, closed-circuit television[.]"[5] Petitioner

---

[4]Petitioner cites to *State v. Payne*, 167 W.Va. 252, 280 S.E.2d 72 (1981) and *State v. Perry*, 41 W.Va. 641, 24 S.E. 634 (1896) for the proposition that "uncorroborated (and refuted) allegations from an accuser should not be sufficient proof to incarcerate the accused person for decades." In *Perry*, we held that "[i]t is error for the court to refuse to instruct the jury that it is their duty to scrutinize with care and caution the uncorroborated and contradicted testimony of a witness." 41 W.Va. at 641, 24 S.E.2 at 635, Syl. Pt. 5. In *Payne*, we expanded upon this holding by finding such an instruction proper where testimony is uncorroborated and uncontradicted:

> Where the State's case is based upon the uncorroborated and uncontradicted identification testimony of a prosecuting witness, it is error not to instruct the jury upon request that, if they believe from the evidence in the case that the crime charged against the defendants rests alone on the testimony of the prosecuting witness, then the jury should scrutinize such testimony with care and caution.

167 W.Va. at 253, 280 S.E.2d at 73, Syl. Pt. 5. Without addressing the applicability of these cases to a supervised release revocation proceeding, we note that the cases do not lend support for petitioner's argument that the child's allegations are insufficient proof and, nonetheless, find no evidence in the record to suggest that the circuit court did not examine the child's interview testimony "with care and caution."

[5]West Virginia Code § 62-6B-3(a) provides, in full, that

> [u]pon a written motion filed by the prosecuting attorney, the child's attorney or the child's guardian ad litem, and upon findings of fact determined pursuant to subjection (b) of this section, a circuit court may order that the testimony of a child witness may be taken at a pretrial proceeding or at trial through the use of live, closed-circuit television.

argues that because the child's allegations were contradicted and he denies any sexual abuse, he should have been permitted to question the child.

Petitioner's second assignment of error is similarly without merit. Petitioner has failed to demonstrate the applicability of West Virginia Code § 62-6B-3(a) to supervised release proceedings or, assuming its applicability, that its procedures were complied with. Specifically, testimony may be taken through live, closed-circuit television "[u]pon a written motion filed by the prosecuting attorney, the child's attorney or the child's guardian ad litem[.]" *Id.*; *see also State v. David K.*, 238 W.Va. 33, 792 S.E.2d 44 (2016) ("W.Va. Code § 62-6B-3(a) requires 'the prosecuting attorney, the child's attorney, or the child's guardian ad litem' to file a written motion requesting that a child witness testify via live closed-circuit television. West Virginia Code § 62-6B-3(a) does not permit a trial judge to *sua sponte* order a child witness to testify via live closed-circuit television."). It does not appear that any such motion was filed. Under these circumstances, we find no error in the circuit court's finding that good cause existed not to require the child to testify in person.[6]

For the foregoing reasons, the circuit court's July 13, 2017, order revoking petitioner's supervised release and sentencing him is hereby affirmed.

Affirmed.

**ISSUED:** June 15, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating

---

[6]Petitioner acknowledges that "there may be good cause to not require an accusing child witness to testify at a supervised release revocation proceeding" and that the circuit court found good cause here given the child's young age and the harmful effects of live testimony on children who are the victims of serious crimes, including sexual abuse. *See Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976) (setting forth the minimum procedural protections that must be afforded in a probation revocation hearing, including "the right to confront and cross-examine witnesses" unless good cause exists for not allowing confrontation). Petitioner also acknowledges that he "had no objection to the [c]ircuit [c]ourt's consideration of the recorded [CAC] interview[.]"