IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

No. 23-239

**FILED**

**March 27, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ARTHUR C.,
Petitioner Below, Petitioner,

v.

JONATHAN FRAME,
Superintendent, Mt. Olive Correctional Complex,
Respondent Below, Respondent

Appeal from the Circuit Court of Marshall County
The Honorable Jeffrey D. Cramer, Judge
Civil Action No. 17-C-167

AFFIRMED

Submitted: January 14, 2026
Filed: March 27, 2026

Jason T. Gain, Esq.
Anmoore, West Virginia
Counsel for the Petitioner

John B. McCuskey, Esq.
Attorney General
William E. Longwell, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Respondent

JUSTICE EWING delivered the Opinion of the Court.

## SYLLABUS OF THE COURT

1.    "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus Point 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.    "Under the provisions of Chapter 53, Article 4A, Code of West Virginia, 1931, as amended, commonly known as 'Post-Conviction Habeas Corpus,' there is a rebuttable presumption that petitioner intelligently and knowingly waived any contention or ground in fact or law relied on in support of his petition for habeas corpus which he could have advanced on direct appeal but which he failed to so advance." Syllabus Point 1, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91 (1972).

3.    "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syllabus Point 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

4.     "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.  Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue."  Syllabus Point 6, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

5.     "In deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test."  Syllabus Point 5, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

**EWING, Justice:**

The petitioner was charged with sexually abusing two victims. Before his trial on these charges, the circuit court granted a motion made on behalf of one of the victims, a child, to testify via live, closed-circuit television under West Virginia Code § 62-6B-3 (2013). During the trial, the petitioner chose to leave the courtroom during the child witness's testimony. Following his eventual convictions, the petitioner sought a writ of habeas corpus, asserting that the statutory scheme authorizing closed-circuit-television testimony under particular circumstances (or, in the alternative, allowing the defendant to leave the courtroom during the child witness's testimony) deprived him of his right to confront the witness under the United States Constitution and the West Virginia Constitution. The petitioner also sought habeas relief on the grounds that he was absent from a critical stage in the underlying criminal proceedings, that his indictments were void, and that the trial judge entered the jury room during its deliberations. Finding that they lacked merit, the circuit court denied habeas relief on these grounds.[1]

Because the petitioner failed to raise these claims on direct appeal and failed to rebut the presumption of waiver, we determine that his claims can only be examined through the lens applicable to ineffective assistance of counsel claims. And because the

---

[1] The circuit court granted habeas relief on the petitioner's claim that certain of his sentences violated the Ex Post Facto Clause, which we describe more fully below. There is no challenge to that particular ruling before this Court, however.

petitioner did not receive ineffective assistance of counsel, we affirm the circuit court's rulings denying habeas relief.

## I. FACTUAL AND PROCEDURAL HISTORY

**A.      The Petitioner's Underlying Criminal Convictions**

In November 2015, the Marshall County Grand Jury returned two indictments against the petitioner. In the first indictment, Marshall County No. 15-F-65, he was charged with four counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child and five counts of first-degree sexual abuse against M.R.[2] The indictment specified that the petitioner committed all but one of the counts of first-degree sexual abuse against M.R. between 2003 and 2007, when M.R. was between the approximate ages of eleven and fifteen, and that he committed the remaining count of first-degree sexual abuse against M.R. between January 1, 2014, and April 23, 2015, when she was twenty-two or twenty-three years old. In the second indictment, Marshall County No. 15-F-66, the petitioner was charged with one count of sexual abuse by a parent, guardian, custodian, or person in a position of trust to a child and one count of first-degree sexual abuse. He was alleged to have committed these crimes against M.C. sometime between January 1, 2015, and April 25, 2015, when M.C. was either seven or eight years old.

---

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

Before the trial on these charges, the circuit court appointed a guardian ad litem for M.C., who was then eight years old. M.C.'s guardian ad litem moved to permit M.C. to testify at the petitioner's trial via live, two-way closed-circuit television, under West Virginia Code § 62-6B-3 (2013).[3]

On April 26, 2016, the circuit court held a pretrial hearing. The court noted that the petitioner's trial counsel was present, but the petitioner was not, and after recounting that the matters had "previously been pre-tried," it asked whether there was "[a]nything to be accomplished here today." The State responded, "No, Your Honor. I think we're ready to go." The circuit court then asked, "Which case is going first?" When the petitioner's trial counsel informed the court that he was "not moving to sever them," the State reminded counsel that "they're separate," and so the petitioner's counsel determined that "we should probably do [M.R.'s] first." At this point, the court reiterated that the petitioner was absent, but it stated that "[t]his is not . . . a critical phase" but rather "probably just administration and nothing substantive happened anyway." The court prepared to end the hearing, but the State alerted the court that it would need to hold a hearing regarding the admissibility of evidence under Rule 404(b) of the West Virginia Rules of Evidence in each victim's separate trial. The petitioner's trial counsel offered

---

[3] *See* W. Va. Code § 62-6B-3(a) (2013) ("Upon a written motion filed by the prosecuting attorney, the child's attorney or the child's guardian ad litem, and upon findings of fact determined pursuant to subsection (b) of this section, a circuit court may order that the testimony of a child witness may be taken at a pretrial proceeding or at trial through the use of live, closed-circuit television.").

that, while he did "not know" why the petitioner was absent, as he "was advised of this hearing," counsel was "okay with proceeding without him here." The court, however, adjourned the hearing and set another date to consider the Rule 404(b) issues.

The petitioner's trial began on May 16, 2016, on both indictments. Although the appendix record contains no transcript of the Rule 404(b) hearing, the trial transcript reflects that the circuit court held such a hearing within the ten days preceding trial. As also reflected in the trial transcript, the circuit court indicated that, at that previously held hearing, the petitioner's counsel, followed by the circuit court, "thorough[ly] examin[ed]" the petitioner, and the petitioner decided that he would try the two indictments together. The trial transcript also reflects that, before empaneling a jury, the petitioner confirmed his election to try the indictments together. Therefore, both of the petitioner's indictments were tried together.

The State's witnesses included Detective Zachary Allman, who investigated the allegations against the petitioner; Susan Harrison, the executive director of an organization that works with abused and neglected children, and who worked with M.C. specifically; M.R.; and M.C. Detective Allman testified that during his interviews of the victims, each disclosed the specifics of the petitioner's sexual abuse of them, which he then recounted for the jury. In his investigation, Detective Allman also interviewed a friend of the family, who corroborated aspects of M.R.'s disclosures, and he took a recorded statement from the petitioner. Detective Allman testified that the petitioner "ma[d]e an

4

admission" concerning at least one instance of his sexual abuse of M.R., and the petitioner's recorded statement was played for the jury.[4]

M.R., who was twenty-four years old at the time of trial, testified that the petitioner began sexually abusing her when she was eight years old and then living in Pennsylvania. She detailed that after moving to Marshall County, West Virginia, when she was eleven, the petitioner continued sexually abusing her. She offered specifics of that abuse.

Ms. Harrison testified that in working with M.C., M.C. disclosed sexual abuse by the petitioner. M.C. drew stick figures representing herself and the petitioner on a sheet of paper, wrote that the petitioner "touched [her]," and identified where on the representative stick figure the petitioner touched her. M.C. provided details of the abuse to Ms. Harrison, which Ms. Harrison recounted to the jury.

When the State called M.C. to testify, the petitioner informed the circuit court that, rather than have M.C. testify via live, closed-circuit television as anticipated, he would leave the courtroom.[5] Accordingly, M.C. testified in the courtroom to the petitioner's

---

[4] The petitioner's statement was not made part of the appendix record.

[5] *See* W. Va. Code § 62-6B-4(a) (2013) ("If the court determines that the use of live, two-way closed-circuit testimony is necessary and orders its use the defendant may, at any time prior to the child witness being called, elect to absent himself from the courtroom

abuse of her when she was eight years old, while the petitioner listened to her testimony from another room. Before cross-examining M.C., the petitioner's counsel consulted with the petitioner.

Following M.C.'s testimony, the State rested. The petitioner called several witnesses, mostly family members, who denied seeing any sexual abuse in the home they shared with the petitioner and the victims.

During deliberations, the jury presented two separate written questions to the circuit court. The trial transcript reflects that, first, the jury requested "a timeline for Count 4 through 9 for [M.R.], 15-F-65 case?" The court and parties agreed that the court could not provide the requested timeline, and the court prepared a written response advising the jury, "With all respect, the attorneys on behalf of their clients have concluded their presentation of evidence. Accordingly, the evidence is closed at this point in the trial." The court asked the bailiff to direct the jury foreperson to "keep this question so that we may make it part of the record." Second, the jury asked, "Is there any way to differentiate between Counts 5 through 9?" The court gave a response similar to the prior response: "Respectfully, the [c]ourt cannot provide you guidance in this regard." Ultimately, the jury found the petitioner guilty of all eleven counts in the two indictments.

---

during the child witness' testimony. If the defendant so elects the child shall be required to testify in the courtroom.").

**B.      The Petitioner's Direct Appeal**

After he was sentenced, the petitioner appealed to this Court. He argued that the State failed to prove certain elements of the crimes of which he was convicted and that the circuit court denied him the right to fully cross-examine M.R. regarding prior domestic violence allegations she had levied against him. *See State v. A.C.*, No. 16-0656, 2017 WL 2210147 (W. Va. May 19, 2017) (memorandum decision). This Court found no merit to his claims and affirmed his convictions. *Id.* at *5.

**C.      The Petitioner's Habeas Proceedings**

The petitioner filed a self-represented petition for a writ of habeas corpus in the circuit court in August 2017. He asserted a number of grounds for relief, including that he was denied effective assistance of counsel and that he had been sentenced under the 2006 version of West Virginia Code § 61-8B-7 (first-degree sexual abuse) in violation of the Ex Post Facto Clause.[6] Without appointing counsel or holding a hearing, the court summarily denied relief and dismissed his petition.

---

[6] *See* Syl. Pt. 2, *State v. Deel*, 237 W. Va. 600, 788 S.E.2d 741 (2016) ("Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." (quoting Syl. Pt. 1, *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980))).

7

The petitioner appealed this denial of habeas relief to this Court. On appeal, we determined that "the petitioner's allegations are sufficient to require a hearing on the ineffective assistance claim, and accordingly, the circuit court was not justified in summarily dismissing the habeas petition." *Arthur C. v. Ames*, No. 18-0699, 2020 WL 4360070, at *4 (W. Va. July 30, 2020) (memorandum decision). We also found error in the court's conclusion that the petitioner was not entitled to "any relief whatsoever" because the respondent conceded that the petitioner's sentences for certain of his first-degree sexual abuse convictions likely violated ex post facto principles. *Id.* Therefore, this Court reversed the court's order dismissing the petitioner's habeas petition and remanded the case to the circuit court for the appointment of counsel and an omnibus habeas corpus hearing. *Id.* at *5.

On remand, the circuit court appointed counsel, and with the assistance of that counsel, the petitioner filed the habeas petition that is the subject of this appeal. The petitioner asserted six grounds for relief. First, he asserted that his sentences for four of his first-degree sexual abuse convictions concerning M.R. violated ex post facto principles because the statutory prison term in effect at the time he committed those four counts was not less than one nor more than five years. *See* W. Va. Code § 61-8B-7 (1984). However, he was sentenced under the 2006 amendments to that statute, which increased the penalty to not less than five nor more than twenty-five years of incarceration when the perpetrator is at least eighteen years old and the victim is younger than twelve. *See id.* (2006).

8

Second, the petitioner argued that the procedure under which M.C. testified violated the Confrontation Clauses in the United States and West Virginia Constitutions. In support, he argued that *Maryland v. Craig*, 497 U.S. 836 (1990), the United States Supreme Court precedent holding that the use of such procedures under certain circumstances does not violate the Confrontation Clause, was subsequently overruled by *Crawford v. Washington*, 541 U.S. 36 (2004).

As his third ground for habeas relief, the petitioner contended that the trial judge improperly entered the jury room during deliberations to respond to one of the jury's written questions. As his fourth ground, he claimed that he was absent for the April 26, 2016, hearing and that it was a critical stage in his criminal proceedings.

Fifth, the petitioner argued that his indictments were void because they failed to conclude with the phrase "Against the peace and dignity of the state," as required by Article II, Section 8 of the West Virginia Constitution. Sixth and finally, the petitioner argued that he received ineffective assistance of counsel due to trial counsel's failure to raise the above-stated issues at trial or in his previous direct appeal.

The parties appeared for an omnibus evidentiary hearing in the circuit court on January 9, 2023. The petitioner's counsel indicated that "the only factual issue we have" concerns whether the trial judge entered the jury room during the jury's deliberations, so the testimony elicited during the hearing concerned primarily that ground. However, the

9

petitioner's trial counsel also testified as to whether the remaining legal issues involved trial counsel's trial strategy. In addition to the petitioner's trial counsel, the petitioner called his friend, his mother, his brother, and his sister to testify on his behalf. The petitioner also testified.

The petitioner's trial counsel testified that he did not see the trial judge enter the jury room at any point but that the petitioner and his siblings had informed him that they saw the judge enter the jury room. Regarding M.C.'s trial testimony, the petitioner's trial counsel testified that "[i]f [he] had [had his] way, [M.C. would] have been in the courtroom." Trial counsel confirmed that "[t]here wasn't any trial strategy that [he] brought in to keep her out of the courtroom." But trial counsel later acknowledged that M.C. testified in the courtroom, and he stated that, "[a]fter talking to [the petitioner]," the petitioner decided to leave the courtroom, as permitted by West Virginia Code § 62-6B-4(a). As for the April 26, 2016, hearing, the petitioner's trial counsel confirmed that, although he did not know why the petitioner was absent, it was not counsel's "intention for [the petitioner] not to be present." Trial counsel testified that he recalled a discussion at that hearing about whether the two cases would be tried together, and he recounted that he "wanted to try both cases separately, but Arthur C[.] chose to have them both at the same trial."

The petitioner acknowledged that his trial counsel recommended that the cases be tried separately, but the petitioner felt that he "ought to do them together." He

10

denied "know[ing] anything about the [April 26, 2016,] court hearing." The remainder of his testimony—and the remainder of his witnesses' testimony—concerned the allegation that the trial judge entered the jury room during deliberations. Although the petitioner, his friend, and his family members gave differing accounts,[7] their testimony was generally consistent on the point that the judge reportedly entered the jury room twice.

The respondent called only the jury foreperson, who testified that he was "positive" the trial judge never entered the jury room, "not during deliberations or during the trial."

The circuit court granted habeas relief, in part, and denied it, in part, by order entered March 27, 2023. The court granted relief on the petitioner's claim that certain of his sentences were illegal, as they were not in accordance with the statute in effect at the time he committed the crimes tied to those sentences. It further set the matter for resentencing on the four counts affected by the error. The court denied relief on all remaining grounds. It concluded that because the petitioner "chose to exit the courtroom

---

[7] For instance, the petitioner's mother did not believe that the trial judge discussed the jury's questions with counsel in the courtroom, but the petitioner's sister said that the judge and counsel did discuss the questions in open court. The petitioner's sister also testified that the judge went so far as to inform those in the courtroom that "it was a hung jury so far," but the petitioner's brother had no recollection of that occurring. The petitioner claimed that the judge stated, "I'll make special circumstances. I'll go in there and talk to them," in response to the jury's second question and then instructed the court reporter to "quit typing and go to recess."

himself" during M.C.'s testimony, "[h]e should not now be allowed to argue for a second chance after now feeling that his decision and that of counsel was wrong." As it was the petitioner's choice, the court determined that he could not demonstrate that he received ineffective assistance from his trial counsel. The court found that the petitioner's own witnesses gave varying accounts of the trial judge's alleged entry into the jury room, and it deemed the petitioner's trial counsel's and the jury foreperson's accounts, maintaining that the judge did not enter the jury room, determinative of the issue. The court also found that "nothing of critical importance occurred" at the April 26, 2016, hearing, and because the petitioner "himself testified that it was his choice to have the cases tried together against the advi[c]e of counsel," if there was any error in the petitioner not being present for that hearing, it was harmless. That the petitioner made this choice also precluded any finding of ineffective assistance of counsel. Finally, the court found that the petitioner's indictments "follow[ed] the general form as outlined in West Virginia Code," and it denied relief on the petitioner's claim that the indictments failed to conclude as specified in the West Virginia Constitution. The petitioner now appeals the court's rulings denying him habeas relief.

## II. STANDARD OF REVIEW

This Court reviews a circuit court's order addressing habeas claims under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review.

12

We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

## III. DISCUSSION

The petitioner raises five assignments of error in his brief. He first argues that the circuit court erroneously denied habeas relief on his claim that his right to confront a witness against him was violated when he was forced to choose between leaving the courtroom during M.C.'s testimony or allowing her testimony via live, closed-circuit television. He also argues that the court erred in denying habeas relief on his claim that he was absent during a critical stage of his criminal proceedings and on his claim that his indictments failed to conclude in the manner specified by this State's constitution. Further, he argues that, to the extent these three grounds for relief were waived, that was due to the ineffective assistance of his trial counsel. Lastly, he maintains that he was entitled to habeas relief on his claim that the trial judge entered the jury room during its deliberations.[8]

---

[8] The petitioner's counsel asserts this last ground under Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure, as he was "ethically compelled to disassociate from the contention[] presented." In further accordance with that Rule, the petitioner's counsel sought leave for the petitioner to file a supplemental brief addressing the issue, which this Court granted. In the petitioner's supplemental brief, he argues that the circuit court erred in "giving more credit to" the respondent's witnesses than his own.

13

At oral argument, however, the petitioner acknowledged that the majority of his claims were waived and that our review was limited to whether the petitioner received ineffective assistance of trial counsel. As the petitioner recognizes,

> [u]nder the provisions of Chapter 53, Article 4A, Code of West Virginia, 1931, as amended, commonly known as "Post-Conviction Habeas Corpus," there is a rebuttable presumption that petitioner intelligently and knowingly waived any contention or ground in fact or law relied on in support of his petition for habeas corpus which he could have advanced on direct appeal but which he failed to so advance.

Syl. Pt. 1, *Ford v. Coiner*, 156 W. Va. 362, 196 S.E.2d 91 (1972). Here, the petitioner could have—but did not—advance on direct appeal his contentions that his right to confront a witness against him was violated, that he was absent from a critical stage of the proceedings, that his indictments failed to conclude in the constitutionally required manner, and that the trial judge had improper communications with the jury. Furthermore, the petitioner was provided an omnibus evidentiary hearing in the lower court, but he offered no rebuttal to the presumption that his failure to raise these claims on direct appeal now operates as a waiver of his ability to pursue them in a petition for a writ of habeas corpus. *See Losh v. McKenzie*, 166 W. Va. 762, 765, 277 S.E.2d 606, 609 (1981) ("While we have held in *Ford v. Coiner*, 156 W.Va. 362, 196 S.E.2d 91 (1972) that the burden of proof rests on the petitioner to rebut the presumption that he intelligently and knowingly waived any contention or ground for relief which he could have advanced upon direct appeal, when the petitioner makes a *prima facie* case that he was denied a fair trial or his constitutional rights, the circuit court is obligated at some point to afford him an opportunity to offer proof to meet the burden of *Ford*, *supra*."). As a result, the petitioner may advance only his claim

14

that he received ineffective assistance of counsel, and it is through that lens that we address his contentions that his right to confrontation was violated, that he was absent during a critical stage of his underlying criminal proceedings, and that his indictments failed to conclude with the language required by the West Virginia Constitution.[9]

In determining whether a habeas petitioner is entitled to relief based upon a claim of ineffective assistance of counsel, we have adopted the following test:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).  And

> [i]n reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions.  Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

---

[9] The petitioner raises only a standalone challenge to the circuit court's denial of habeas relief on his claim that the trial judge entered the jury room during its deliberations. He does not argue on appeal that there was any deficiency in representation with respect to that alleged occurrence.  Because the standalone claim has been waived, we do not consider it here.

*Id.* at 6–7, 459 S.E.2d at 117–18, Syl. Pt. 6.  Furthermore, because a habeas petitioner must

show both objectively deficient performance and that the objectively deficient performance

prejudiced him,

> [i]n deciding ineffective of assistance claims, a court need not address both
> prongs of the conjunctive standard of *Strickland v. Washington*, 466 U.S.
> 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W.Va.
> 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a
> petitioner's failure to meet either prong of the test.

Syl. Pt. 5, *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).  It is

within this framework that we address each of the petitioner's remaining claims.


### A.     The Confrontation Clause


The petitioner argues that *Craig*, in which the United States Supreme Court

determined that the Confrontation Clause did not "categorically" bar a child witness from

testifying against a defendant at trial by one-way closed-circuit television in a child abuse

case, 497 U.S. at 840, was overruled by *Crawford*.  As a result, he contends that West

Virginia Code §§ 62-6B-1 through -4, which authorize, under certain conditions, the taking

of testimony from a child witness who is the alleged victim of certain enumerated sex

crimes by live, two-way, closed-circuit television, are unconstitutional, since that statutory

process derives its validity from the purportedly now-overruled *Craig*.[10]  Because the

---

[10] Two of these four statutes, West Virginia Code §§ 62-6B-2 and -3, were revised in 2025.  This Opinion addresses only the version of those statutes in effect at the time of the petitioner's May 2016 trial.

petitioner's trial counsel failed to argue the constitutional infirmity of a statutory process that forced him into a Hobson's choice of either exiting the courtroom or giving up his right to face-to-face confrontation by permitting testimony from M.C. by closed-circuit television, the petitioner claims he was denied his right to confrontation guaranteed by the United States and West Virginia Constitutions. Finally, the petitioner contends that "[a]s confrontation is so basic of a right, this undermines confidence in the outcome of the trial."

The Confrontation Clause in the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The United States Supreme Court has recognized that while "[m]ost of [its] encounters with the Confrontation Clause have involved either the admissibility of out-of-court statements . . . or restrictions on the scope of cross-examination," at the Clause's center it "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (citations omitted). Similarly, Article III, Section 14 of the West Virginia Constitution provides, in part, that in the "[t]rials of crimes, and of misdemeanors . . . the accused shall . . . be confronted with the witnesses against him." Like its federal counterpart, "the right to confrontation assured by . . . W.Va. Const. art. III, § 14 is violated where a witness testifies at trial and the defendant is denied the opportunity to confront the witness face-to-face." Syl. Pt. 5, in part, *State v. Murray*, 180 W. Va. 41, 375 S.E.2d 405 (1988).

Even so, the United States Supreme Court "ha[s] never held . . . that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Craig*, 497 U.S. at 844. On occasion, though not easily, the "preference" for face-to-face confrontation must yield "to considerations of public policy and the necessities of the case." *Id.* at 849 (quoting *Mattox v. United States*, 156 U.S. 237, 243 (1895)). The *Craig* Court identified one such occasion in considering the constitutionality of a statutory procedure like the one at issue here,[11] holding that

> if the State makes an adequate showing of necessity,[12] the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant.

*Id.* at 855. In reaching this holding, the *Craig* Court observed that "[t]he central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Id.* at 845. Because the statutory scheme at issue there "preserve[d]

---

[11] The petitioner characterizes the Maryland statutory scheme at issue in *Craig* as "virtually identical" to this State's own. We need not consider the particulars of this State's statutory process or the extent to which it aligns with that considered in *Craig* because the petitioner is not arguing that the process fails to meet the requirements of *Craig*. His argument is that, post-*Crawford*, the statutory procedure on the whole fails because, to satisfy the right to confrontation guaranteed by the state and federal constitutions, only actual face-to-face confrontation suffices.

[12] "The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Craig*, 497 U.S. at 855.

18

all of the other elements of the confrontation right," including under-oath testimony, the right to cross-examination, and the judge, jury, and defendant's ability to observe the witness during his/her testimony, the Court found that the procedure "adequately ensure[d] that the testimony [was] both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Id.* at 851.

Then, over a decade later in *Crawford*, the Supreme Court agreed that the Confrontation Clause's "ultimate goal is to ensure reliability of evidence," but it specified that the guarantee is a "procedural rather than a substantive" one, and "[i]t commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." 541 U.S. at 61. For that reason, the *Crawford* Court abrogated its earlier decision in *Ohio v. Roberts*, 448 U.S. 56 (1980), in which the Court concluded that the Confrontation Clause did not preclude the admission of an unavailable witness's statement against an accused at trial, so long as the statement bore "adequate 'indicia of reliability,'" shown either "where the evidence falls within a firmly rooted hearsay exception" or where there is "a showing of particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66. The *Roberts* test, the *Crawford* Court found, "allow[ed] a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability," and it found that, "[b]y replacing categorical constitutional guarantees with open-ended balancing tests, we do violence to their design." *Crawford*, 541 U.S. at 62, 67–68. Therefore, the *Crawford* Court concluded that "[w]here

19

testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68.

In this appeal, the petitioner relies upon *Crawford*'s rejection of the *Roberts* reliability standard with respect to testimonial evidence, which the *Craig* majority partially relied upon to explain its reasoning, to underpin his assertions that *Crawford* overruled *Craig*, that West Virginia Code §§ 62-6B-1 through -4 are consequently unconstitutional, and that trial counsel's failure to argue that unconstitutionality amounted to ineffective assistance.

But *Crawford* did not implicitly or explicitly overrule *Craig*. As a practical matter, the United States Supreme Court does not implicitly overrule cases. The Supreme Court has consistently emphasized: "Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 252–53 (1998) (citing *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.")). Further still, where a Supreme Court decision expressly overrules another decision, the Supreme Court has said that if it had intended to overrule others, "it surely would have said so directly, rather than act in such an ambiguous manner." *Carmell v. Texas*, 529 U.S. 513,

20

538 (2000). Notably, *Crawford* did not directly overrule *Craig*; in fact, the *Crawford* majority did not mention, or even cite, *Craig*.

The recognition that the *Crawford* majority failed to mention *Craig* underscores a second, substantive basis for determining that *Crawford* did not overrule *Craig*: *Craig* and *Crawford* unquestionably addressed different Confrontation Clause issues. *Craig* addressed the conditions under which the Clause's face-to-face requirement yields to an important state interest, while *Crawford* addressed the admissibility of out-of-court testimonial statements from a witness unavailable for trial. This critical distinction has led state and federal courts across the country to conclude that *Crawford* did not overrule *Craig* and/or to continue to apply *Craig*, not *Crawford*, where a child victim's closed-circuit-television testimony at trial is alleged to violate the Confrontation Clause. *See, e.g.*, *United States v. Carter*, 907 F.3d 1199, 1206 n.3 (9th Cir. 2018) ("But while *Craig* and *Crawford* stand in 'marked contrast' in several respects, '*Crawford* did not overturn *Craig*.'" (quoting *United States v. Cox*, 871 F.3d 479, 492–95 (6th Cir. 2017) (Sutton, J., concurring))), *cert. denied*, 588 U.S. 910 (2019); *United States v. Bordeaux*, 400 F.3d 548, 552 (8th Cir. 2005) ("The Supreme Court sketched the contours of the confrontation right in cases like this in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1999)."); *State v. Henriod*, 131 P.3d 232, 237–38 (Utah 2006) ("We also believe that *Craig* is the clearly applicable precedent in the case before us. Whereas *Crawford* dealt solely with the Confrontation Clause implications of the admission of testimonial hearsay—in other words, prior out-of-court statements—*Craig* addressed the

21

in-court testimony of an allegedly abused child via closed circuit television."); *State v. Jackson*, 717 S.E.2d 35, 40 (N.C. Ct. App. 2011) ("Defendant's argument regarding C.G.'s testimony by CCTV is thus controlled by *Craig*, not *Crawford*, and we tailor our analysis accordingly."), *appeal dismissed and disc. review denied*, 720 S.E.2d 681 (N.C. 2012), *cert. denied*, 568 U.S. 846 (2012).

Moreover, in a per curiam decision issued mere months ago, the United States Supreme Court itself affirmed reliance on *Craig* in *Pitts v. Mississippi*, 607 U.S. ---, 2025 WL 3260171 (2025). In *Pitts*, pursuant to a Mississippi statute that provided child witnesses a mandatory "right" to a screen that would obscure the child's view of the defendant but allow the judge and jury to observe the child, a child victim testified behind such a screen over the defendant's objection that the statute needed to "give way to the Sixth Amendment's demands" of a case-specific finding of necessity. *Id.* at ---, 2025 WL 3260171, at *1. The Supreme Court agreed with the defendant, reiterating that

> [u]nder *Coy* and *Craig*, a trial court may not deny a defendant his Sixth Amendment right to meet his accusers face to face simply because a state statute permits screening. Nor may a court authorize screening based on "generalized finding[s]" of necessity underlying such a statute. *Coy*, 487 U.S., at 1021, 108 S.Ct. 2798. Instead, the Sixth Amendment tolerates screening in child-abuse cases only if a court "hear[s] evidence" and issues a "case-specific" finding of "[t]he requisite . . . necessity." See *Craig*, 497 U.S., at 855, 110 S.Ct. 3157.

*Pitts*, 607 U.S. at ---, 2025 WL 3260171, at *2. In further reliance on *Craig*, the *Pitts* Court summarized that while the Sixth Amendment ordinarily guarantees face-to-face confrontation at trial,

22

[i]n child-abuse cases, however, that rule sometimes gives way. Consistent with the Sixth Amendment, a court may screen a child witness from the defendant when "necessary to protect [the child] from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate." *Maryland v. Craig*, 497 U.S. 836, 857, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1999).

Still, before invoking this procedure, a court must proceed with care. It must "hear evidence" and make a "case-specific" finding of "[t]he requisite . . . necessity." *Id.*, at 855, 110 S.Ct. 3157.

*Pitts*, 607 U.S. at ---, 2025 WL 3260171, at *1.

Correspondingly, the petitioner's identification of cases decided by this Court before *Craig* and *Crawford* that reference an accused's right to face-to-face confrontation under the West Virginia Constitution does not call into question our adherence to *Craig*. *See* Syl. Pt. 5, *Murray*, 180 W. Va. at 44, 375 S.E.2d at 408 (holding that the denial of face-to-face confrontation violates the West Virginia Constitution); *State ex rel. Grob v. Blair*, 158 W. Va. 647, 653, 214 S.E.2d 330, 334 (1975) (describing the essence of the right of confrontation as "setting a witness face-to-face with the accused" (quoting 21 Am. Jur. 2d *Criminal Law* § 334 (1965))). Indeed, this Court has already implicitly recognized *Craig*'s continuing validity. In *State v. David K.*, 238 W. Va. 33, 792 S.E.2d 44 (2016), the Court addressed whether a defendant's right to confrontation was denied when the circuit court, on its own accord, ordered a child victim of his sexual abuse to testify against him via live, closed-circuit television after she became unresponsive while testifying against him face-to-face at trial. *Id.* at 37–38, 792 S.E.2d at 48–49. Though neither party addressed *Craig*, the Court looked to that decision to "guide[]" its

23

analysis, not *Crawford*. *David K.*, 238 W. Va. at 39, 792 S.E.2d at 50. This Court first observed that *Craig* required a trial court to conduct an evidentiary hearing and make case-specific findings of necessity before a child witness could testify by live, closed-circuit television. *David K.*, 238 W. Va. at 39, 792 S.E.2d at 50. We then turned to the statutory requirements, which likewise include that specific findings be made after an evidentiary hearing, ultimately characterizing this State's scheme as "procedural safeguards" that are designed "to accomplish the twin goals of protecting child victims when justice so requires and *ensuring the constitutional right of a defendant to confront his/her accuser*." *Id*. at 40, 42, 792 S.E.2d at 51, 53 (emphasis added).

In sum, *Crawford* did not overrule *Craig*, and the constitutionality of West Virginia Code §§ 62-6B-1 through -4 therefore remains supported under both state and federal precedent. Because *Crawford* did not overrule *Craig*, the petitioner's trial counsel could not have rendered ineffective assistance of counsel by not advancing this unmeritorious challenge to the constitutionality of those statutes, and the circuit court did not err in denying relief on this ground.[13]

---

[13] The petitioner also asserts that the trial court's explanation to the jury that the petitioner was leaving the courtroom so that M.C. could testify live in front of the jurors, that M.C. had a "right" to have a guardian ad litem appointed, and that "as a comfort level" the guardian was going to sit near M.C. during her testimony "is a clear due process and confrontation clause denial," and he argues that the "way out of this quagmire" is to hold that *Crawford* overruled *Craig*. But the petitioner fails to cite any authority to support these contentions or explain how these occurrences in fact deprived him of due process or his right to confrontation. As we have done repeatedly when presented with "half-hearted assignments that were not fully developed and argued in the appellate brief," we decline to consider these arguments. *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621

24

## B. Presence During a Critical Stage of the Criminal Proceeding

Next, the petitioner argues that he was denied effective assistance of counsel when trial counsel failed to object to the petitioner's absence from the April 16, 2016, hearing. He acknowledges that "nothing of monumental importance happened during the hearing," but he claims that there was discussion of whether the cases would be tried separately or together. Had he seen "the demeanor of the judge, the prosecutor, or his own attorney while discussing these matters," he contemplates, "[i]t is not clear whether the Petitioner could have changed his mind."

To be sure, "[t]he defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless." Syl. Pt. 6, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977). A critical stage is "one where the defendant's right to a fair trial will be affected." *Id.* at 246, 233 S.E.2d at 719. One example of a critical stage identified in *Boyd* is a pretrial hearing "involving substantial matters of law or the testimony of witnesses," but the "[e]ntry of routine orders filing motions or court orders involving

(1996); *see also id.* ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

25

clerical or administrative matters in connection with the criminal proceeding do not require the presence of the accused." *Id.* Also, "consultation between defense counsel, the prosecutor and the court prior to the actual trial are not deemed a critical stage." *Id.*

Initially, we reject the petitioner's characterization of the parties' discussion as concerning *whether* the separately indicted cases would be tried together at the April 26, 2016, hearing. The record reflects only that the State corrected any misconception that the cases had either been indicted together or otherwise consolidated. Regardless, though, anything that happened in the petitioner's absence at that hearing did not prejudice him because, by the time the petitioner was tried, he had been "thorough[ly] examin[ed]" by the trial court and his own counsel regarding whether to try the cases together, and the petitioner decided "that he would try both cases at one time." At the petitioner's omnibus evidentiary hearing, he confirmed that it was "[his] choice" to try the cases together and that he followed through with that choice despite his trial counsel's contrary advice. The petitioner's trial proceeded consistent with his choice, with both indictments being tried at the same time, so the petitioner did not show that the result of the proceedings would have been different had his trial counsel objected to his earlier absence at the April 26, 2016, hearing.

## C.     The Indictments Clause

26

Lastly, the petitioner argues that he received ineffective assistance because trial counsel failed to object to his indictments. Article II, Section 8 of the West Virginia Constitution requires, "Indictments shall conclude, 'Against the peace and dignity of the state.'" According to the petitioner, because each count of his indictments concludes with this required language *and* identifies the statute he was charged with violating, his indictments do not conclude in the constitutionally required manner.[14]

The petitioner relies upon *Lemons v. State*, 4 W. Va. 755 (1870), to support his claim. At the time *Lemons* was decided, the version of West Virginia Constitution in effect required that indictments "*shall* conclude, 'against the peace and dignity of the State of West Virginia.'" *Id.* at 757. The indictment at issue in *Lemons*, however, concluded, "against the peace and dignity of the State of *W.* Virginia." *Id.* The *Lemons* Court determined that the constitution prescribed "the precise words for the conclusion of all indictments, . . . and the quotation marks, which are superadded, would indicate a purpose that a strict and *literal* compliance in the exact language of the constitution would be required." *Id.* Because the indictment at issue in *Lemons* was not in "literal compliance," the Court deemed it "insufficient . . . to satisfy the constitutional requirement." *Id.*

---

[14] To illustrate, Count I of the indictment charging crimes related to M.R. concludes, "against the peace and dignity of the State, and in violation of §61-8D-5(a) of the West Virginia Code." Each count of both indictments follows that format.

About four and a half years after *Lemons*, this Court considered a similar challenge to an indictment in *State v. Allen*, 8 W. Va. 680 (1874). By this time, the current version of West Virginia's Constitution had been adopted, with the Indictments Clause providing that indictments "shall conclude, 'Against the peace and dignity of the state.'" *See Allen*, 8 W. Va. at 684. The indictment considered in *Allen*, however, concluded "against the peace and dignity of the State *of West Virginia*." *Id.* at 684 (emphasis added). The *Allen* Court distinguished that indictment from the one presented in *Lemons*:

> The Lemon case omitted the word "*West*," which word was positively prescribed by the Constitution as an essential part; and of course could not be omitted in the conclusion of the indictment. But in this case, not a word is omitted that was prescribed by the Constitution; the conclusion is precisely that prescribed by the Constitution, and the words "*of West Virginia*" that are added to the conclusion should be considered as mere surplussage or additional designation, inasmuch, as they do not indicate a State different from the one intended as having been offended in its peace and dignity.

*Id.* at 684-85.

The petitioner's indictments are like those considered in *Allen*, not *Lemons*. The petitioner's indictments do not omit any words prescribed by the constitution, and they conclude with the precise language required by Article II, Section 8. His indictments merely add the statute the petitioner was accused of violating to that conclusion, an additional designation that does not affect their validity. Because the petitioner's indictments contain the necessary concluding language, his trial counsel was not objectively unreasonable in failing to challenge the validity of them, and the circuit court did not err in denying habeas relief on this claim.

28

## IV. CONCLUSION

For the reasons stated above, we affirm the circuit court's March 27, 2023, order granting, in part, and denying, in part, habeas relief.

Affirmed.